**J. C. PENNEY COMPANY, Inc.,**
**Plaintiff,**

**v.**

The **UNITED STATES DEPARTMENT OF the TREASURY, the Bureau of Customs, David M. Kennedy, Secretary of the Treasury, Eugene T. Rossides, Assistant Secretary of the Treasury, Matthew J. Marks, Deputy to the Assistant Secretary, Myles J. Ambrose, Commissioner of Customs, individually and as officers and/or employees of the United States Department of the Treasury and/or the Bureau of Customs, Washington, D. C., Defendants.**

**No. 70 Civ. 4980.**

United States District Court,
S. D. New York.

Dec. 3, 1970.

27. *Id*. 318 U.S. at 196–197, 63 S.Ct. at 553.

Charles T. Stewart, Albert W. Driver, Jr., Archibald E. King, New York City, for plaintiff; Leva, Hawes, Symington, Martin & Oppenheimer, Washington, D. C., of counsel.

William D. Ruckelshaus, Asst. Atty. Gen., Andrew P. Vance, Chief, Customs Section, Frederick L. Ikenson, Civil Division, Dept. of Justice, New York City, for defendants.

## OPINION

EDWARD WEINFELD, District Judge.

This motion, made on the eve of an administrative determination to be rendered no later than December 4, 1970, by the United States Treasury Department, seeks to enjoin all defendants from making such determination upon the ground of their alleged denial of plaintiff's claim to a due process hearing before the determination is made. The short span of

time between the argument of this motion and the deadline for a decision, as well as the volume of other pressing applications for injunctive relief heard at the same Motion Term, preclude a detailed exposition of the alleged facts set forth in the voluminous papers or of all the legal theories advanced in the extensive briefs submitted by both parties.[1]

The issue now before the court is plaintiff's motion directing the defendants, the United States Treasury Department, Secretary of the Treasury, the Assistant Secretary of the Treasury, the Deputy to the Assistant Secretary, the Bureau of Customs and the Commissioner of Customs, to vacate the withholding of appraisement as to television sets imported by plaintiff from Japan; also, plaintiff seeks a preliminary injunction enjoining the defendants from conducting and completing their current investigation to determine whether such television sets are being sold, or likely to be sold, at less than fair value (hereafter "LTFV"), and from making a determination thereunder; further, plaintiff seeks immediate dismissal of the pending proceeding unless it is accorded a full hearing in accordance with due process of law and the adjudicatory provisions of the Administrative Procedure Act.

The case centers about the Antidumping Law, enacted almost fifty years ago,[2] aimed to prevent actual or threatened injury to a domestic industry resulting from the sale in the United States market of merchandise at prices lower than in the home market (country of origin). The Secretary of the Treasury is charged under the statute with the duty of determining whether "foreign merchandise is being, or is likely to be, sold in the United States * * * at less than its fair value" (LTFV).[3]

---

1. Although plaintiff's attorneys knew at least as early as October 6, 1970, that their main contentions, the basis of this action, had been rejected by the Treasury Department, suit was not commenced until November 13, and this motion was not brought on for argument until November 24.

2. 19 U.S.C. § 160 et seq.

3. 19 U.S.C. § 160(a). 19 C.F.R. § 53.3 states:
 "FAIR VALUE BASED ON PRICE IN COUNTRY OF EXPORTATION: THE USUAL TEST.
 "(a) *General.* Merchandise imported into the United States will ordinarily be

In broad outline the procedure with respect to an alleged antidumping violation is as follows. When the Commissioner of Customs has reason to suspect or believe that goods are being imported and sold at less than fair value, and that there is consequent injury, or likelihood of injury, to a United States industry, the Customs Bureau issues a "Withholding of Appraisement Notice." [4] In the normal case, upon the arrival of foreign merchandise in the United States, its processing by Customs includes appraisement to determine what, if any, customs duties are owed on it.[5] Once appraisement has been completed and the merchandise has been entered, no further duty is normally imposed. However, in the instances of withholding of appraisement, the importer, if he desires to receive the merchandise, is required to give a bond in an amount fixed by the Bureau of Customs to secure payment of additional duties should a subsequent finding of dumping be made.[6] Within three months after the Withholding of Appraisement Notice, the Secretary of the Treasury must make his determination as to whether there have been sales at less than fair value.[7] In the event he does make such a determination, he advises the United States Tariff Commission, which, within three months thereafter, determines whether the domestic industry is being, or is likely to be, injured by reason of the importation of such merchandise into the United States. If the Tariff Commission so decides, then the Secretary of the Treasury makes a statutory dumping finding and imposes special dumping duties in an amount sufficient to cover the dumping margin.[8]

There are, however, preliminary steps that precede the withholding of appraisement. If any District Director of Customs has knowledge of any grounds or reason to believe or suspect that any merchandise is being, or likely to be, imported into the United States contrary to the LTFV provisions of the Antidumping Act, he is required to communicate "his belief or suspicion" promptly to the Commissioner of Customs.[9] Also, any person outside the Customs Service who has such information may, on behalf of an industry in the United States, communicate such information in writing to the Commissioner of Customs.[10] The nature of the information to be submitted by either the District Director of Customs or an outside complainant is specified in the regulations of the Treasury Department.[11] If the Commissioner of Customs is satisfied, upon the basis of the information submitted, that further investigation is warranted, he publishes an "Antidumping Proceeding Notice," which, among other matters, summarizes the information received, lists the name of the person (if outside the Service) or

considered to have been sold, or to be likely to be sold, at less than fair value if the purchase price or exporter's sales price (as defined in sections 203 and 204, respectively, of the Antidumping Act, 1921, as amended (19 U.S.C. 162, 163)), as the case may be, is, or is likely to be, less than the price * * * at which such or similar merchandise * * * is sold for consumption in the country of exportation on or about the date of purchase or agreement to purchase of the merchandise imported into the United States if purchase price applies, or on or about the date of exportation thereof if exporter's sales price applies.

4. The Withholding of Appraisement Notice indicates:

"(1) That the belief or suspicion relates only to certain shippers or producers, if this is the case and that the investigation is limited to the transactions of such shippers or producers; (2) The expiration date of the notice (which shall be no more than 3 months from the date of publication of the notice in the Federal Register * * *)." 19 C.F.R. § 53.34.

5. 19 U.S.C. § 1500, as amended by § 204 of the Customs Administrative Act of 1970, Pub.L.No.91–271, 84 Stat. 274 (June 2, 1970).

6. 19 C.F.R. §§ 53.53, 53.54.

7. 19 U.S.C. § 160(b) ; 19 C.F.R. §§ 53.-34(b), 53.36.

8. 19 U.S.C. §§ 160(a), 161; 19 C.F.R. §§ 53.40, 53.56.

9. 19 C.F.R. § 53.25.

10. 19 C.F.R. § 53.26.

11. 19 C.F.R. § 53.27.

industry who has presented the question of dumping, and indicates the fact that there is some evidence on record concerning an injury to, or likelihood of injury, or the prevention of establishment of an industry in the United States.[12] Following the publication of the Antidumping Proceeding Notice, the Commissioner conducts a full scale investigation to obtain such additional information as may be necessary to enable the Secretary of the Treasury to make the determination as to the fact or likelihood of sales at less than fair value, which investigation may include inquiries conducted by the Customs representatives in foreign countries.[13] Against this general description of procedure, we turn to the facts in the instant case.

The initial charge of antidumping importation was presented to the defendants in March 1968 by the Imports Committee, Tube Division, Electronic Industries Association. This charge alleged information which indicated "a possibility that monochrome and color television receiving sets from Japan are being, or likely to be, sold at less than fair value within the meaning of the Antidumping Act," and named five Japanese companies as the exporters. Thereafter, on June 18, an "Antidumping Proceeding Notice," dated June 10, was published in the Federal Register, which related to television sets being imported by plaintiff, among others, and purchased from Japanese exporters, including Matsushita Electric Industrial Company, Ltd. (MEI), plaintiff's principal supplier of monochrome and color television sets. The Notice named the Electronic Industries Association as the source of the information upon which the proceeding was based, and stated that investigation warranted further inquiry to determine the validity of the information.[14]

On June 10, 1968, the Customs Bureau submitted a questionnaire to MEI, and thereafter Customs Agents conducted an extensive investigation in Japan and the United States. Plaintiff alleges that MEI and other Japanese television manufacturers submitted detailed answers to the questionnaire with extensive supporting data, made their records available to the Customs authorities, responded to their inquiries, and from time to time supplied additional data and records. Plaintiff itself conducted a survey of Japanese marketing practices and submitted the results to the Bureau of Customs. The fact issue which now gives rise to plaintiff's dispute as to a possible LTFV determination against it, and its claim of right to a hearing to challenge defendants' evidence, centers about the Japanese exporters' contention that the higher price charged in the Japanese market is due to the manufacturers' absorption of advertising, distribution, marketing and other charges not applicable to television sets sold and imported by plaintiff. In sum, plaintiff contends that "the Japanese television manufacturer today provides numerous services for his dealers and distributors that in the United States are borne by wholesalers and retailers" [15] evidently an explanation for the differential not accepted by Customs Agents, who disallowed the claimed price adjustments in the home market, the consequence of which may be to increase the dumping margin, if dumping is found.

After the investigation, the Commissioner of Customs caused to be published, on September 4, 1970, a "Withholding of Appraisement Notice," [16] which set forth his view that there were reasonable grounds to believe or suspect that the Japanese television sets being imported from Japan were priced here at less than the foreign market value, and since that date appraisement has been withheld. The Notice also contained a "statement of reasons" for this view and the criteria upon which it was based, and it invited interested parties to submit their writ-

---

12. 19 C.F.R. § 53.30.

13. 19 C.F.R. § 53.31.

14. 33 Fed.Reg. 8851 (1968).

15. Plaintiff's memorandum of law, p. 28.

16. 19 C.F.R. § 53.34; 35 Fed.Reg. 14100 (1970).

ten views or arguments, or to request that the Secretary of the Treasury afford an opportunity to present their oral views.

Plaintiff's counsel, by letters dated September 17 and 28, 1970, requested that the Commissioner of Customs conduct a full formal hearing in accordance with the adjudicatory provisions of the Administrative Procedure Act and the requirements of due process. The letters stated:

"[W]e ask that you give us the Department of the Treasury's assurance that a hearing will be held which will include the following minimum due process safeguards:

"1. All testimony will be given under oath.

"2. All evidence which is introduced, either oral or written, will be on the record.

"3. Treasury's LTFV determination will be based solely on the record of the hearing and will contain detailed findings of fact and a detailed statement of reasons for its conclusion.

"4. As a directly affected American importer which must bear the burden of any dumping duty ultimately assessed, J. C. Penney will have the right:

(a) to call witnesses;

(b) to examine and/or cross-examine all persons who have had any connection with this case;

(c) to submit rebuttal evidence and argument; and

(d) to inspect all documentary evidence introduced by any participant at the hearing."

Plaintiff's counsel was advised by the Treasury Department by letter dated October 6, 1970, that their client and other interested parties would be afforded an opportunity to make oral presentation with respect to the withholding of the appraisement notice at a meeting to be held on October 14; that the meeting would be informal; that each interested party would be afforded one hour to make an oral presentation, and rebuttal, if required, would be permitted. The Treasury Department also took the position that the meeting was in furtherance of its conduct of the investigation under the Antidumping Act, and that the formal "hearing" requirements of the Administrative Procedure Act did not apply. The meeting was held on October 14 and attended by plaintiff's representatives.

As already noted, the Secretary of the Treasury is required to make his determination by December 4 as to whether or not the imported Japanese television sets have been sold by the importers at less than their fair value, and the relief which plaintiff here seeks would, among other matters, enjoin him from making that determination, whatever it may be, unless it is granted the hearing referred to in its demand as set forth above.

In addition to plaintiff's claim that the LTFV proceeding is of an adjudicatory nature, which requires application of the Administrative Procedure Act, and its further claim that its constitutional right to due process has been denied, plaintiff also charges that the defendants have prejudged the issue. The defendants deny all the plaintiff's claims; they seek dismissal of the complaint for lack of jurisdiction over the subject matter and in any event urge that plaintiff has an adequate remedy at law.

■ The ultimate question in the pending proceedings before the Treasury Department is whether a special dumping duty should be imposed upon imported Japanese television sets as a result of various statutory determinations yet to be made by the defendants. The investigation leading up to the required respective determinations by both the Secretary of the Treasury and the Tariff Commission is preliminary to any ultimate finding that dumping has occurred. Furthermore, it is only after both the Secretary of the Treasury and the Tariff Commission have made their affirmative determinations that the special dumping duty, if any, is imposed with respect to

such imported merchandise in the event dumping margins are found to exist.[17] I am satisfied that since the appraised value of merchandise and the possible imposition of an additional duty is at issue, the matter is exclusively within the jurisdiction of the Customs Court and that this court is without jurisdiction. It may be conceded, and in fact is not disputed by the defendants, that if the antidumping procedures ultimately result in additional duties, the amounts, in view of the substantial importation of television sets by plaintiff, will run far in excess of $10,000. And since it asserts constitutional and statutory claims, plaintiff contends that this court has jurisdiction by virtue of section 1331 of Title 28, which provides:

"§ 1331. FEDERAL QUESTION; AMOUNT IN CONTROVERSY; COSTS

"(a) The district courts shall have original jurisdiction of all civil actions wherein the matter in controversy exceeds the sum or value of $10,000, exclusive of interest and costs, and arises under the Constitution, laws, or treaties of the United States."

However, this contention disregards section 1340 of Title 28, which provides:

"§ 1340. INTERNAL REVENUE; CUSTOMS DUTIES

"The district courts shall have original jurisdiction of any civil action arising under any Act of Congress providing for internal revenue, or revenue from imports or tonnage except matters within the jurisdiction of the Customs Court."

Also applicable, and negating jurisdiction in this court, is section 1582(a) of Title 28, United States Code, which defines the jurisdiction of the Customs Court:

"§ 1582. JURISDICTION OF THE CUSTOMS COURT

"(a) The Customs Court shall have exclusive jurisdiction of civil actions instituted by any person whose protest pursuant to the Tariff Act of 1930, as amended, has been denied, in whole or in part, by the appropriate customs officer, where the administrative decision, including the legality of all orders and findings entering into the same, involves: (1) the appraised value of merchandise; (2) the classification and rate and amount of duties chargeable; (3) all charges or exactions of whatever character within the jurisdiction of the Secretary of the Treasury; (4) the exclusion of merchandise from entry or delivery under any provisions of the customs laws; * * *." [18]

 I agree with the observation made in Eastern States Petroleum Corp. v. Rogers,[19] with respect to section 1331:

"Section 1331 vests federal question jurisdiction in the district courts and, unlike § 1340, contains no exception relating to Customs Court jurisdiction. But we do not agree that Congress' failure to provide an exception to § 1331 similar to that specified in § 1340 indicates an intent to open a loophole in its clear purpose to exclude customs cases from the district courts. When Congress provides a specific judicial remedy, relief may generally be accorded only through the specified procedure." [20]

Particularly apposite to the question of jurisdiction is North American Cement Corp. v. Anderson,[21] where Circuit Judge Edgerton wrote for a unanimous court. There, American cement manufacturers

---

17. 19 U.S.C. § 161.

18. As amended by § 110 of the Customs Courts Act of 1970, Pub.L.No.91–271.

19. 108 U.S.App.D.C. 63, 280 F.2d 611, cert. denied, 364 U.S. 891, 81 S.Ct. 222, 5 L.Ed.2d 187 (1960).

20. *Id.* at 613.

21. 109 U.S.App.D.C. 162, 284 F.2d 591 (1960).

filed information with the Secretary of the Treasury and asked that he investigate whether cement imported from Norway was sold here at less than its fair value. The Secretary found to the contrary that Norwegian cement was not being so sold in the United States. The American cement manufacturers thereupon sought declaratory and injunctive relief against the Secretary and the Commissioner of Customs. Their complaint was dismissed. Upon appeal the dismissal was affirmed, the court stating:

"In Morgantown Glassware Guild v. Humphrey [98 U.S.App.D.C. 375, 236 F.2d 670 (D.C.Cir.), cert. denied, 352 U.S. 896, 77 S.Ct. 133, 1 L.Ed.2d 87 (1956)], we read 28 U.S.C. § 1583 [22] as providing without limitation that ' "The Customs Court shall have exclusive jurisdiction to review on protest the * * * rate and amount of duties chargeable and as to all exactions of whatever character within the jurisdiction of the Secretary of the Treasury * * * * " ' 98 U.S.App.D.C. 375, 376, 236 F.2d 670, 671. In Boston Wool Trade Ass'n v. Snyder, we said: 'It is clear that the controversy concerns the duty to be imposed upon certain imports. As such, it is within the exclusive jurisdiction of the Court of Customs and Patent Appeals.' 82 U.S.

App.D.C. 144, 145, 161 F.2d 648, 649. Even the question whether the Antidumping Act is constitutional has been held to be within the exclusive jurisdiction of the Customs Court. Horton v. Humphrey, D.C.D.C., 146 F.Supp. 819, affirmed, 352 U.S. 921, 77 S.Ct. 224, 1 L.Ed.2d 157." [23]

A recent statute, enacted by Congress in 1970,[24] as a new section in the Customs Courts Act, gives added support to the defendants' contention on the jurisdiction issue. This statute, 28 U.S.C., section 255, provides:

"§ 255. THREE-JUDGE TRIALS

"(a) Upon application of any party to a civil action, or upon his own initiative, the chief judge of the Customs Court shall designate any three judges of the court to hear and determine any civil action which the chief judge finds: (1) raises an issue of the constitutionality of an Act of Congress, a proclamation of the President or an Executive order; or (2) has broad or significant implications in the administration or interpretation of the customs laws." [25]

■■ Plaintiff argues that since no dumping tax has been assessed, it cannot file a protest [26] and invoke the jurisdiction of the Customs Court; [27] according-

22. § 1583 was one of the predecessors of the present "exclusive jurisdiction" statute, 28 U.S.C. § 1582, as amended by § 110 of the Customs Courts Act of 1970, Pub.L.No.91-271 (June 2, 1970). The current statute restates the jurisdiction of the Customs Court as it previously appeared in 28 U.S.C. §§ 1582 and 1583. See S.Rep.No.91-576, 91st Cong., 2d Sess. 16 (1970); 1970 U.S.Code Cong. & Admin.News, No. 6, at 1870. [footnote supplied.]

23. 109 U.S.App.D.C. 162, 284 F.2d 591, 592 (1960).

24. Customs Courts Act of 1970, Pub.L.No. 91-271, § 108 (June 2, 1970).

25. The legislative history of the statute indicates that "[t]he purpose of this provision is to permit broader representation of the court in deciding landmark or other important cases." 1970 U.S.Code Cong. & Admin.News, No. 6, at 1869. Both

the plaintiff and America Importers Association, Inc., amicus curiae, stress that the issues here presented with respect to antidumping investigations and procedures before the Treasury Department are of critical importance to a substantial segment of the business community, and that the case involves a public interest much broader than the claims of the plaintiff in this case.

26. Antidumping appeals and protests are made in the same manner as appeals, applications for review and protests relating to ordinary customs duties. 19 U.S.C. § 169, as amended by § 314 of the Customs Administrative Act of 1970, Pub. L.No.91-271 (June 2, 1970); 19 C.F.R. § 53.64. See also 19 U.S.C. §§ 1514, 1515, as amended by §§ 207 and 208 of the Customs Administrative Act of 1970, Pub. L.No.91-271 (June 2, 1970).

27. 28 U.S.C. § 1582(a).

ly, it contends that this court should take jurisdiction under 28 U.S.C. section 1361, which vests the district courts with jurisdiction of mandamus actions to compel officers, employees or agencies of the United States to perform a duty owed to a plaintiff. That mandamus statute and the Administrative Procedure Act upon which plaintiff also relies do not confer jurisdiction where otherwise none exists.[28] The fact that the controversy may not be ripe for review by the Customs Court does not deprive that court of its exclusive jurisdiction and thereby vest this court with jurisdiction.[29] The Customs Court, moreover, when its jurisdiction is properly invoked, is empowered to pass upon and consider all claims, stat-

utory and constitutional, which would also embrace plaintiff's charge of prejudgment and prejudicial publicity.[30] And indeed the court itself has recognized its jurisdiction in this respect.[31] Virtually all the cases cited by plaintiff to support its position that the district court has power to grant injunctive relief against the denial of a constitutional right (or a right under the Administrative Procedure Act) in an administrative proceeding prior to the exhaustion of administrative remedies are cases outside of Customs Court jurisdiction.[32]

Other statutes also foreclose this court's jurisdiction of the subject matter of this suit. Section 7421 of the In-

**28.** *See* Sprague Elec. Co. v. Tax Court of United States, 230 F.Supp. 779, 781–782 (D.Mass.1964), aff'd, 340 F.2d 947 (1st Cir. 1965); Olin Industries, Inc. v. NLRB, 72 F.Supp. 225, 228 (D.Mass. 1947).

**29.** *Cf.* Schilling v. Rogers, 363 U.S. 666, 670, 80 S.Ct. 1288, 4 L.Ed.2d 1478 (1960); Morgantown Glassware Guild v. Humphrey, 98 U.S.App.D.C. 375, 236 F.2d 670, cert. denied, 352 U.S. 896, 77 S.Ct. 133, 1 L.Ed.2d 87 (1956); Sprague Elec. Co. v. Tax Court of United States, 230 F.Supp. 779 (D.Mass.1964), aff'd, 340 F.2d 947 (1st Cir. 1965); Olin Industries, Inc. v. NLRB, 72 F.Supp. 225, 228 (D.Mass.1947).

**30.** *Cf.* Morgantown Glassware Guild v. Humphrey, 98 U.S.App.D.C. 375, 236 F. 2d 670, 671, cert. denied, 352 U.S. 896, 77 S.Ct. 133, 1 L.Ed.2d 87 (1956); Riccomini v. United States, 69 F.2d 480, 483–484 (9th Cir. 1934); *see also* decision by Ryan, Ch. J., in Cresthill Industries v. Fowler, 66 Civ. 1658 (S.D. N.Y.1966): "Invalidity by reason of procedural irregularity as well as by reason of substance is a dispute for that Court [Customs Court], as is the constitutionality of the act complained of [citing Morgantown Glassware Guild v. Humphrey, supra]"; *see also* Argosy, Ltd. v. Hennigan, 404 F.2d 14, 20 (5th Cir. 1968); Kreutz v. Durning, 69 F.2d 802, 803–804 (2d Cir. 1934); Horton v. Humphrey, 146 F.Supp. 819, 820–821 (D.D.C.) (3-judge court), aff'd without opinion, 352 U.S. 921, 77 S.Ct. 224, 1 L.Ed.2d 557 (1956).

**31.** *See* Elof Hansson, Inc. v. United States, 178 F.Supp. 922 (Cust.Ct.1960), rev'd on other grounds, 296 F.2d 779, 48 C.C.P.A. 91 (1961), cert. denied, 368 U.S. 899, 82 S.Ct. 179, 7 L.Ed.2d 95 (1962) (holding Administrative Procedure Act applicable to proceedings under the Antidumping Act); Star-Kist Foods, Inc. v. United States, 169 F.Supp. 268 (Cust.Ct. 1958) (upholding the constitutionality of the Reciprocal Trade Agreements Act of 1934); *see also* Feltex Corp. v. Dutchess Hat Works, 71 F.2d 322 (C.C.P.A.1934) (holding Presidential proclamation valid under Antidumping Act); Kleberg & Co. v. United States, 71 F.2d 332, 21 C.C. P.A. 110 (C.C.P.A.1933) (upholding constitutionality of Antidumping Act); City Lumber Co. v. United States, 311 F.Supp. 340 (Cust.Ct.1970) (upholding constitutionality of imposition of dumping duties under Antidumping Act).

**32.** *See, e. g.,* Abbott Laboratories v. Gardner, 387 U.S. 136, 87 S.Ct. 1507, 18 L.Ed. 2d 681 (1967); McCulloch v. Sociedad Nacional de Marineros de Honduras, 372 U.S. 10, 83 S.Ct. 671, 9 L.Ed.2d 547 (1963); Leedom v. Kyne, 358 U.S. 184, 79 S.Ct. 180, 3 L.Ed.2d 210 (1958); Skinner & Eddy Corp. v. United States, 249 U.S. 557, 39 S.Ct. 375, 63 L.Ed. 772 (1919); Medical Comm. for Human Rights v. SEC, 432 F.2d 659 (D.C.Cir. 1970); Elmo Division of Drive-X Co. v. Dixon, 121 U.S.App.D.C. 113, 348 F.2d 342 (1965); Amos Treat & Co. v. SEC, 113 U.S.App.D.C. 100, 306 F.2d 260 (1962); Isbrandtsen Co. v. United States, 93 U.S.App.D.C. 293, 211 F.2d 51 (1954); Lehigh Portland Cement Co. v. FTC, 291 F.Supp. 628 (E.D.Va.1968), aff'd, 416 F.2d 971 (4th Cir. 1969); Eisler v. Clark, 77 F.Supp. 610 (D.D.C. 1948).

ternal Revenue Code of 1954 [33] prohibits a suit "for the purpose of restraining the assessment or collection of any tax." So, too, the Declaratory Judgment Act, also cited by plaintiff as a basis for jurisdiction in this court, excepts controversies "with respect to Federal taxes." [34] In two cases, Cottman Co. v. Dailey [35] and Horton v. Humphrey,[36] which involved the assessment of dumping duties, the courts considered respectively the foregoing statutes and in both instances decided that exclusive jurisdiction was in the Customs Court. Plaintiff, conceding the cases were correctly decided, seeks to distinguish them from the instant one on the ground that "[t]hose decisions required plaintiffs to seek relief in Customs Court because, at the time review was sought, the Customs Court had exclusive jurisdiction over their claims. In both cases, plaintiffs did not sue until the completion of the administrative proceeding, when Treasury had levied or was about to levy a dumping duty." [37]

The purported distinction is without substance. To permit plaintiff to maintain this suit in this court because it was commenced prior to a determination by the Secretary of the Treasury that there are or are likely to be sales of Japanese imported televisions at less than fair value—a prerequisite not only to a determination by the Tariff Commission of injury to industry, but also to the imposition thereafter of a dumping duty—would indeed be a neat way to circumvent the congressional purpose to prohibit suits to restrain the assessment of a tax. Moreover, it would also permit interference with Congress' "complete system of corrective justice with respect to matters arising under the customs law." [38]

The complaint is dismissed for lack of jurisdiction over the subject matter.

33. 26 U.S.C. § 7421.

34. 28 U.S.C. § 2201.

35. 94 F.2d 85, 89 (4th Cir. 1938).

36. 146 F.Supp. 819 (D.D.C.), aff'd, 352 U.S. 921, 77 S.Ct. 224, 1 L.Ed.2d 157 (1956).

37. Plaintiff's memorandum of law, p. 59.

38. Cottman Co. v. Dailey, 94 F.2d 85, 88 (4th Cir. 1938).