**James X. WADDELL et al., Appellants,**

v.

**Noah L. ALLDREDGE, Warden, et al.**

No. 72–1417.

United States Court of Appeals,
Third Circuit.

Submitted April 23, 1973.

Decided June 29, 1973.

James X. Waddell, pro se.

S. John Cottone, U. S. Atty., Harry A. Nagle, Lewisburg, Pa., for appellee.

Before VAN DUSEN, ALDISERT and ROSENN, Circuit Judges.

OPINION OF THE COURT

PER CURIAM:

This appeal challenges a March 22, 1972, district court order granting a motion to dismiss an August 10, 1971, complaint invoking jurisdiction of the court to grant relief under 28 U.S.C. §§ 1361 and 1651(a) and seeking, *inter alia,* orders directing the prison officials at the U. S. Northeastern Penitentiary, Lewisburg, Pa., to allow Black Muslims to establish "worshipping services in accord with the teachings of Messenger Elijah Muhammed" and to prepare at least one meal a day, pork free.[1] The Answer asked that the Complaint be dismissed because (1) mandamus relief was not available for failure to exhaust petitioner's administrative remedy by petition to the United States Bureau of Prisons, (2) relief under the Federal Tort Claims Act is unavailable for failure to exhaust administrative remedies, 28 U.S.C. § 2675, and to join an indispensable party, (3) habeas corpus relief is not available to investigate complaints of prisoners for mistreatment, and (4) petitioner may not proceed under 42 U.S.C. § 1983. See Long v. Parker, 390 F.2d 816, 819 (3d Cir. 1968). The Answer also alleged:

". . . the plaintiff and all persons similarly situated are authorized to conduct religious services which are properly supervised and conducted by ordained ministers of their religion. Although the defendant has authorized visits from ordained Black Muslim ministers for that purpose and has agreed to pay expenses or salary to such ministers, the leader of the Black Muslim movement and the

---

1. The Complaint, which alleges discrimination against "other individuals" as well as petitioner, also asked for $75,000 damages per person for the hardships they had suffered as a result of the denial of their alleged right to worship and of their alleged right to have pork-free meals.

plaintiff have failed to cooperate with the defendant in any manner in this endeavor.

"Relative to the plaintiff's allegation regarding diet and the preparation of food at the institution, the defendant states that the same policies and procedures proven in the case of Long v. Parker, Civil Nos. 8870 and 9152, are presently in full force and effect. These policies afford the plaintiff a nutritious and balanced diet."

Petitioner filed a Counter Answer, denying these allegations and alleging that Mr. Raush, Associate Warden, had stated that the Bureau of Prisons would not allow the Muslims to worship.

Especially in prisoner actions asking for mandamus remedies, this court has held that federal prisoners must exhaust available administrative means at their disposal before judicial review is available. See Green v. United States, 283 F.2d 687, 688–89 (3d Cir. 1960), where the court said:

". . . appellant has failed to exhaust his administrative remedies. Under the regulations promulgated by the Bureau of Prisons, there is available to all prisoners, the right of the 'Prisoner's Mail Box.' This procedure sets up an effective means of review of actions of local prison authorities. . . .

. . . . . . .

"This case presents an alleged situation in which administrative review should have been utilized. Appellant asserts deprivation of a fundamental right by the Warden of the Lewisburg Penitentiary. The claim implies an abuse of discretion by that official. However, in the administration of federal prisons primary supervision is delegated by statute to the Bureau of Prisons, 62 Stat. 849, 18 U.S.C. § 4042. By that law the Bureau is directly responsible for the control and maintenance of all such institutions and has the power to review any action taken by the local wardens."

In McKart v. United States, 395 U.S. 185, 194–195, 89 S.Ct. 1657, 23 L.Ed.2d 194 (1969), Mr. Justice Marshall stated the reasons behind the doctrine of exhaustion of administrative remedies in this language, which we have concluded is applicable to this record:

"Particularly, judicial review may be hindered by the failure of the litigant to allow the agency to make a factual record, or to exercise its discretion or apply its expertise. In addition, other justifications for requiring exhaustion in cases of this sort have nothing to do with the dangers of interruption of the administrative process. Certain very practical notions of judicial efficiency come into play as well. A complaining party may be successful in vindicating his rights in the administrative process. If he is required to pursue his administrative remedies, the courts may never have to intervene. And notions of administrative autonomy require that the agency be given a chance to discover and correct its own errors. Finally, it is possible that frequent and deliberate flouting of administrative processes could weaken the effectiveness of an agency by encouraging people to ignore its procedures."

Similarly, this language is used in Davis, Administrative Law Treatise (1970 Supp.) § 20.01, p. 644:

"The reason for requiring exhaustion is that the informal denial is likely to come from subordinate employees, and that whatever errors in facts of law or discretion they have made are likely to be corrected by the superior officers who consider the case when it is heard, so that resort to the federal court may be unnecessary."

Other Courts of Appeals have similarly required exhaustion of administrative remedies by prisoners through application to the United States Bureau of Prisons. See Light v. United States, 430 F.2d 932, 933 (5th Cir. 1970), and cases there cited; Paden v. United States, 430 F.2d 882, 883 (5th Cir. 1970); cf. Heft

v. Parker, 258 F.Supp. 507 (M.D.Pa. 1966).

Section 5(a) of Bureau of Prisons Policy Statement 7300.2A dated 12/28/67 [2] and entitled Prisoners Mail Box provides for the forwarding of mail to the Bureau of Prisons in Washington, D. C., on a daily basis and Section 6(a) provides for a reply directly to the inmate. Hence, there was readily available to petitioner a method of review of any ruling of Associate Warden Raush.

Paragraph 4 of the Policy Statement 7300.43A dated 7/7/70 on Religious Beliefs and Practices of Committed Offenders makes clear that reasonable opportunities for Black Muslims to attend religious services are prescribed. See subsections b(1)–(4), e and f(1).[3]

In Long v. Parker, 390 F.2d 816 at 820 (3d Cir. 1968), this court stated:

". . . members of the Black Muslim faith have an absolute right to embrace their religious beliefs, and to be free from discrimination because of their adherence to those beliefs. While it is clear that these rights are not lost to those who are committed to prison, it is also clear that within the prison society as well as without, the practice of religious beliefs is subject to reasonable regulations, necessary for the protection and welfare of the community involved."

and at 821:

". . . while provision is made for Catholic and Protestant chaplains as part of the staff of the institution, the appointment of chaplains for each of the numerous sects and denominations having small followings would be impossible under conditions existing in a maximum security prison."

Also, the Policy Statement 22001.1. dated 5/19/69 on Use of Pork or Pork Derivatives in the Preparation and Seasoning of Specific Food Items provides, *inter alia:*

"a. The Food Administrator, in preparing ten-day menus for administrative appraisal, shall identify with an asterisk all food items to be prepared or seasoned with pork or pork derivatives.

"b. Menu boards posted in all dining rooms shall indicate, with an asterisk after the food item, specified products prepared or seasoned with pork or pork derivatives. It shall be the responsibility of field administrative officials to inform in an appropriate way, the local institution population of the meanings of the asterisk.

"c. In all instances where the posted menu limits consumer choice of fresh or canned vegetables to one entree, pork or pork derivatives shall not be used as a seasoning agent."

Furthermore, we noted in Long v. Parker, 455 F.2d 466, 467 (3d Cir. 1972):

"The prison authorities are entirely willing to have Muslim ministers visit the prison and to allow them the same fees and expenses as given the clerics of other faiths but the said ministers so far have refused. Food accommodation to all inmates' religions is made as much as is possible."

For the foregoing reasons, the district court order of March 22, 1972, will be affirmed.

2. As of 8/7/72, this Policy Statement was superseded by Policy Statement 7300.2B. Such Policy Statements are authorized by 28 C.F.R. 0.95(c) and (d) and 28 C.F.R. 0.96 and 0.97.

3. Subsection F(1) provides:
"f. *Diet*
    (1) A committed offender may abstain from eating those food items, served to the general population, which are prohibited by the religion of the resident. The committed offender may receive added portions of non-rationed food items, from the main serving line, which in no way cause a violation of the restrictions of the faith professed by the committed offender. Ordinarily, the practical problems of institutional administration must be primary in arranging for the observance of religious holidays, sacraments, celebrations, diets, and the like."