**UNITED STATES of America,**
**Plaintiff,**

v.

**COMMONWEALTH OF PENNSYLVANIA and Milton Shapp, Governor of the Commonwealth of Pennsylvania, et al., Defendants.**

**Milton J. SHAPP, Governor, et al., Plaintiffs to the Counterclaim,**

v.

**UNITED STATES of America and Caspar W. Weinberger, Secretary of the Department of Health, Education and Welfare, et al., Defendants to Counterclaim.**

**Civ. A. No. 74–860.**

United States District Court,
M. D. Pennsylvania.

May 7, 1975.

As Amended May 30, 1975.

**262**

————◆————

S. John Cottone, U. S. Atty., Scranton, Pa., William B. Saxbe, Atty. Gen., J. Stanley Pottinger, Asst. Atty. Gen., Louis M. Thrasher, Michael S. Lottman, Diane S. Dorfman, Attys., Dept. of Justice, Washington, D. C., for the United States; John B. Rhinelander, Gen. Counsel, Stephanie W. Naidoff, Regional Atty., Dept. Health, Ed. and Welfare, of counsel.

Lawrence Silver, J. Justin Blewitt, Jr., Robert Nagle, Deputy Attys. Gen., Dept. of Justice, Harrisburg, Pa., for Com. of Pennsylvania.

## MEMORANDUM AND ORDER

HERMAN, District Judge.

The United States Government filed suit in this court seeking an injunction to compel the Commonwealth of Pennsylvania and various of its officials to enforce provisions of Medicare, 42 U.S.C. § 1395ff., and Medicaid, 42 U.S.C. § 1396ff. with respect to skilled nursing home facilities.

This memorandum is concerned with the Government's motion to dismiss a counterclaim filed by the Commonwealth.

Medicaid, for the purposes of this memorandum, is essentially a contractual arrangement between the two governments by which the federal government directly pays the state which in turn pays nursing homes that provide medical assistance to the blind, aged or disabled. In order for the state to qualify for reimbursement it must submit a plan to the federal government insuring that the facilities receiving payments meet certain minimum standards.[1]

The federal government has conceded that at all times relevant to the matters of this suit Pennsylvania has had an approved plan (Complaint, ¶ 5(a)).

Medicare, Title XVIII of the Social Security Act of 1935, 42 U.S.C. § 1935ff., is a system of aid to the elderly. Payments under Medicare do not pass through state agencies. Instead, the state serves as the contractual policing arm of the federal government insuring that participating facilities are certified to be in compliance with the Life Safety Code. So long as the state certifies to the federal government that a facility is so operating then occupants of the facility remain eligible for payments directly from the federal government. Under this program the state conducts essentially the same type of supervision as under Medicaid, including requiring compliance with the Life Safety Code.

The thrust of the complaint is the federal government's contention that Pennsylvania failed to meet its supervisory obligations. The complaint charged that "at least 134" nursing homes were then operating without complying with the Life Safety Code under Medicaid. Further, the complaint alleged that an additional 52 such homes participating in Medicare had not properly been certified as being in compliance with the Life Safety Code.

1. The primary element of the plan called for in 42 U.S.C. § 1396 requires assurance that the nursing facilities meet the standards of the Life Safety Code of the National Fire Protection Association (21st ed. 1967). The

Life Safety Code, in part, sets standards relating to sprinkler systems, fire alarms, hallway and door widths and the accessibility of emergency exits. 45 C.F.R. §§ 249.10, 249.-33, et seq.

The Commonwealth's counterclaim [2] asserts that the named federal officials, based on the Government's stated allegations, have wrongfully withheld funds which have been recently estimated at $12 million. The funds making up the counterclaim are those withheld by the counterclaim defendants because of the alleged failure of the Commonwealth to adequately police Pennsylvania's nursing home facilities under Medicaid and Medicare. The Commonwealth alleges jurisdiction pursuant to the Administrative Procedure Act, 5 U.S.C. § 702 et seq.; the Declaratory Judgment Act, 28 U.S.C. § 2201 et seq.; the Mandamus Statute, 28 U.S.C. § 1361, and the federal question statute, 28 U.S.C. § 1331.

The counterclaim defendants have moved to dismiss the Commonwealth's counterclaim on four grounds: (1) lack of subject matter jurisdiction, (2) sovereign immunity, (3) failure to exhaust administrative remedies, and (4) failure to state a claim upon which relief can be granted.

## JURISDICTION

### Administrative Procedure Act.

■ The Commonwealth first alleges subject matter jurisdiction pursuant to the Administrative Procedure Act, 5 U.S.C. § 702 et seq. The law of the Third Circuit clearly establishes that the APA does not confer subject matter jurisdiction. Chaudoin v. Atkinson, 494 F.2d 1323, 1328 (3d Cir. 1974); Getty Oil Co. v. Ruckelshaus, 467 F.2d 349, 367 (3d Cir. 1972). *But see*, State Highway Comm'n v. Volpe, 479 F.2d 1099, 1105 n. 7 (8th Cir. 1973).

### Declaratory Judgment Act.

■ The defendants' jurisdictional reliance on the Declaratory Judgment

Act, 28 U.S.C. § 2201 et seq. is equally misplaced. Skelly Oil Co. v. Phillips Petroleum Co., 339 U.S. 667, 671–72, 70 S. Ct. 876, 94 L.Ed. 1194, 1199–1200 (1950); Ragoni v. United States, 424 F.2d 261, 264 (3d Cir. 1970); Getty Oil, *supra*, at 356.

### The Mandamus Statute.

[3] The Mandamus Statute, 28 U.S.C. § 1361, presents by far the most complex jurisdictional issue in the instant dispute. The Mandamus Statute states:

"The district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff."

The federal government, as the moving party, argues that § 1361 is not here applicable for four reasons:

(1) The statute does not confer subject matter jurisdiction.

(2) The statute does not authorize a district court to compel an official to pay money out of the treasury.

(3) The duty at question is purely ministerial and the statute covers only failures to perform clear, mandatory acts, not discretionary ones.

(4) Mandamus is available only when no other adequate remedy exists and the Commonwealth has such remedies available.

For the reasons that follow, the court concludes that § 1361 is sufficient in and of itself to confer subject matter jurisdiction.

A substantial body of case law exists on each side of the jurisdictional aspect of § 1361.[3] Unfortunately, the Third

---

2. Only the United States appeared as a plaintiff in the original complaint. However, the court granted the Commonwealth's motion to add the above-named individual federal officials as parties-defendant to the counterclaim. The adequacy of the service on

the added counterclaim defendants is not before the court.

3. For cases rejecting jurisdiction *see, e. g.*, J. C. Penney Co. v. United States Dept. of Treasury, 319 F.Supp. 1023, 1030 (S.D.N.Y.),

Circuit has not directly resolved the matter,[4] nor do the cases on either side reveal the reasoning which gave rise to the decisions.

The federal government relies heavily on J. C. Penney Co. v. United States Dept. of Treasury, 319 F.Supp. 1023, 1030 (S.D.N.Y.1970), aff'd, 439 F.2d 63, 68 (2d Cir. 1971), cert. denied, 404 U.S. 869, 92 S.Ct. 60, 30 L.Ed.2d 113 (1971). *But see,* Liberation News Service, *infra.* Both the district and circuit courts in J. C. Penney clearly declared § 1361 not to confer subject matter jurisdiction "where otherwise none exists." 319 F. Supp., at 1030.

In support of its assertion the district court presented no reasoning, but merely relied in a footnote on Sprague Elec. Co. v. Tax Court of the United States, 230 F.Supp. 779, 781–82 (D.Mass.), aff'd, 340 F.2d 947 (1st Cir. 1965). Sprague was an appeal from an adverse decision of the tax court.

The only reference to § 1361, by way of dicta, is the opinion of the district court that the statute deals with venue. The circuit affirmed the decision based exclusively on 26 U.S.C. § 732.

The overwhelming majority of cases rejecting jurisdiction based on § 1361 do so by interpreting the statute as exclusively one of venue. The predominate view of these cases is that § 1361 does no more than extend the venue over mandamus once exclusively restricted to the District of Columbia. Typical of

these cases is Cossey v. Seamans, 344 F. Supp. 1368 (W.D.Okl.1972). That court put great emphasis on a portion of the legislative history which indicated that the statute was not intended to create "new liabilities or new causes of action."[5]

Assuming that § 1361 merely does no more than extend the District of Columbia venue to other courts, then the former court's jurisdiction is determinative of ours. Such an inquiry leads inevitably to a conclusion that this court has jurisdiction pursuant to § 1361. The prior case law controlling mandamus jurisdiction in the District of Columbia establishes that mandamus is an original process, jurisdictional in itself. United States ex rel. McBride v. Schurz, 102 U.S. (12 Otto) 378, 26 L.Ed. 167 (1880); Kendall v. United States ex rel. Stokes, 12 Pet. 524, 37 U.S. 524, 9 L.Ed. 1181; 13 A.L.R. Fed. 145 § 2[a]; Byse & Fiocca, "Section 1361 of the Mandamus and Venue Act of 1962 and Nonstatutory Judicial Review of Federal Administrative Action," 81 Harv.L. Rev. 308 (1967). Consequently, to argue that § 1361 creates no new causes of action is to beg the true issue.

More instructive than the case law is the legislation and history itself.

The plain language of § 1361 expressly speaks in terms of "jurisdiction" and is silent on venue. Moreover, § 1361 was created as part of a bill (P.L. 87–

---

aff'd, 439 F.2d 63, 68 (2d Cir. 1971), cert. denied, 404 U.S. 869, 92 S.Ct. 60, 30 L.Ed.2d 113 (1971) ; Akins v. Saxbe, 380 F. Supp. 1210, 1217 (D.Me.1974) ; Donahue v. Butz, 363 F.Supp. 1316, 1318 n. 1 (N.D.Cal. 1973) ; Cossey v. Seamans, 344 F.Supp. 1368, 1369 (W.D.Okl.1972). For cases finding jurisdiction, see, e. g., State Highway Comm'n of Missouri v. Volpe, 347 F.Supp. 950, 952 (W.D.Mo.), aff'd, 479 F.2d 1099 (8th Cir. 1973) ; National Milk Producers Federation v. Shultz, 372 F.Supp. 745, 747 (D.D.C.1974) ; Carnage v. Sanborn, 304 F. Supp. 857, 858 (N.D.Ga.1969). *See also,* the dicta in Chaudoin v. Atkinson, 494 F.2d

1323, 1329 (3d Cir. 1974) ; Waddell v. All-dredge, 480 F.2d 1078 (3d Cir. 1973) ; Berends v. Butz, 357 F.Supp. 143, 149 (D. Minn.1973).

4. Our own circuit, in dicta, has inconclusively hinted that § 1361 can be a source of subject matter jurisdiction. Chaudoin, *supra,* at 1329; Waddell v. Alldredge, 480 F.2d 1078 (3d Cir. 1973). *See also,* Hunt v. Local Board No. 197, 438 F.2d 1128 (3d Cir. 1971).

5. 1962 U.S.Code Cong. & Admin.News, 87th Congress, 2d Session, p. 2784.

748, 76 Stat. 744), which also amended 28 U.S.C. § 1391, the venue statute.[6] The amendment, which appears as § 1391(e), is clearly one of venue[7] and does precisely what the federal government claims § 1361 was created to do. See, 52 Am.Jur.2d § 18. It is entirely illogical to assert that Congress in a single statute simultaneously amended one statute and created another to perform identical functions. The legislative history, notwithstanding Cossey, *supra*, establishes to this court's satisfaction that § 1361 is a jurisdictional statute.

> "First, it [P.L. 87–748, 76 Stat. 744] specifically grants *jurisdiction* to the district courts to issue orders compelling Government officials to perform their duties and to make decisions in matters involving the exercise of discretion. . . . Secondly, it broadens the *venue* provisions of title 28 of the United States Code . . . ." 1962 U.S.Cong. & Admin.News, 87th Congress, 2d Session, p. 2784.

The Congressional committe report acknowledged the unwillingness of the district courts to grant mandamus relief unless jurisdiction was otherwise acquired and made clear that the bill was intended to correct that "unfair imposition".

In Liberation News Service v. Eastland, 426 F.2d 1379, 1383 (2d Cir. 1970) the court, by way of dicta, undermined its previous ruling in J. C. Penney, *supra*. The decision in Liberation News Service was based on the defendants' status as legislators rather than the required executive officials. However, the court's analysis of the relevant legislative history is consistent with our own. See, also, Leonhard v. Mitchell, 473 F.2d 709, 712–13 (2d Cir. 1973). Judge Hastie, of this circuit, sitting by designation, has concluded that § 1361 "enlarged the jurisdiction of the district courts and liberalized venue." Ashe v. McNamara, 355 F.2d 277, 279 (1st Cir. 1965).

## SOVEREIGN IMMUNITY & MONETARY RELIEF

Having concluded that the mandamus statute confers subject matter jurisdiction on this court, we now turn to the monetary aspects of the instant suit.

The federal government first argues that § 1361 does not authorize monetary relief and, second, that the doctrine of sovereign immunity prevents what it describes as a raid on the Treasury.

District courts cannot mandamus the payment of unliquidated sums in the nature of damages. However, a liquidated sum wrongfully withheld by a federal official or agency is subject to mandamus if that official or agency owes a duty of payment to the claimant. Brown v. United States, 365 F.Supp. 328, 338 (E.D.Pa.1973); State Highway Comm'n v. Volpe, 479 F.2d 1099, 1103 n. 6 (8th Cir. 1973); State of Minnesota v. Weinberger, 359 F.Supp. 789 (D.Minn. 1973); City of New York v. Ruckelshaus, 358 F.Supp. 669, 673 (D.D.C. 1973), aff'd, 161 U.S.App.D.C. 114, 494 F.2d 1033 (1974).[8]

---

6. In Natural Resources Defense Council, Inc. v. T. V. A., 459 F.2d 255 (2d Cir. 1972) the court correctly noted that § 1361 and § 1391(e) must be read in conjunction with one another. However, the court did not reach the jurisdictional aspect of § 1361. See also, Davis v. Federal Deposit Insurance Corp., 369 F.Supp. 277 (D.Colo.1974).

7. Schlanger v. Seamans, 401 U.S. 487, 91 S. Ct. 995, 28 L.Ed.2d 251 (1971); Ashe v. McNamara, 355 F.2d 277, 279 (1st Cir. 1965) (Hastie, J., sitting by designation).

8. The federal government has obliquely raised the question of this court's jurisdiction vis a vis the Tucker Act, 28 U.S.C. § 1346. The Tucker Act, the government argues, puts exclusive jurisdiction in the Court of Claims of cases against the government in excess of $10,000. The case of Carter v. Seamans, 411 F.2d 767 (5th Cir. 1969), cert. denied, 397 U.S. 941, 90 S.Ct. 953, 25 L.Ed.2d 121 (1970), posited by the federal government, is not applicable here. The Tucker Act is, first of all, not absolute.

■ Moreover, sovereign immunity plays no role when the federal officials are alleged to have acted outside the scope of their authority. This is, of course, the thrust of the counterclaim. State Highway Comm'n v. Volpe, *supra*, 479 F.2d at 1123.[9] The resolution of whether the counterclaim defendants acted outside their authority must await future determination.

■ The implicit substance of the federal government's argument is that even if all the elements of mandamus were established, the writ could not issue merely because the duty owed involved government funds. This court finds no support for such reasoning either in logic or the case law.

The federal government raised several important questions regarding the applicability of mandamus in the instant case. Essentially, they involve the traditional prerequisites or elements of mandamus: the existence of a clear, nondiscretionary duty; exhaustion of administrative remedies and the unavailability of an adequate remedy at law.

After careful consideration, the court concludes that these matters must be resolved at a later stage of the case.[10]

Owing to the abolition of mandamus in Rule 81(b), Fed.R.Civ.P. and its backhanded resurrection in § 1361, there is a split of authority over what elements must be established to secure the writ. For example, in Berends v. Butz, 357 F.Supp. 143, 149 (D.Minn.1973), the court held that review by mandamus was controlled by the Administrative Procedure Act. An even more fluid review is recommended in Byse v. Fiocca, 81 Harv.L.Rev. 308 (1967), *supra*. See also, the somewhat inconclusive discussion in Marquez v. Hardin, 339 F.Supp. 1364, 1368–69 (N.D.Cal.1969). In Mattern v. Weinberger, 377 F.Supp. 906, 914–15 n. 10 (E.D.Pa.1974) the court chose to adhere to the more traditional view of mandamus, despite certain dicta in Ragoni v. United States, 424 F.2d 261, 263 (3d Cir. 1970). In Ragoni the court declared that mandamus review consisted of applying the arbitrary and capricious standard which is considerably less traditional than Mattern. *But see,* Grant v. Hogan, 505 F.2d 1220, 1225 (3d Cir. 1974).

The variety amongst the authorities causes this court to conclude that further attempts to resolve the instant case would be premature. Therefore, the parties will be directed to submit more detailed briefs on the prerequisites and elements of § 1361.[11]

As a result of today's decision the court need not reach the question of jurisdiction pursuant to 28 U.S.C. § 1331.

An appropriate order will be entered.

---

As in State of Minnesota, *supra*, this court does not interpret § 1346 as an exclusive statute which overrides any other jurisdictional grant merely based on the amount in controversy.

9. In addition, the Commonwealth seeks declaratory relief which is characteristically not in any way insulated by sovereign immunity. Rowley v. McMillan, 502 F.2d 1326, 1331 (4th Cir. 1974); *cf.,* Scheuer v. Rhodes, 416 U.S. 232, 94 S.Ct. 1683, 40 L. Ed.2d 90 (1974).

10. For support of delaying resolution of such issues *see, e. g.,* 13 A.L.R. Fed. 151 n. 3.

11. Assuming arguendo that exhaustion of remedies, no adequate remedy at law and a clear duty are all elements of § 1361, the court would require a more complete record before it could determine whether the counterclaim plaintiffs were entitled to the relief sought.