UNITED STATES of America, Plaintiff,

and

Trustees for Alaska, et al., Plaintiffs-Intervenors,

v.

KETCHIKAN PULP COMPANY, Defendant.

Civ. No. A76-245.

United States District Court, D. Alaska.

March 1, 1977.

See also, D.C., 430 F.Supp. 83.

John A. Hamill, Chief, Legal Support Branch, William Christian, E. P. A., Region X, Seattle, Wash., Edward L. Strohbehn, Jr., Natural Resources Defense Council, Washington, D. C., Wilson A. Rice, Trustees for Alaska, Anchorage, Alaska, for plaintiff.

Theodore M. Pease, Richard A. Helm, Burr, Pease & Kurtz, Anchorage, Alaska, Douglas E. Kliever, Daniel B. Silver, Cleary, Gottlieb, Steen & Hamilton, Washington, D. C., for defendant.

## MEMORANDUM AND ORDER

VON DER HEYDT, Chief Judge.

THIS CAUSE comes before the court upon a motion for entry of a consent decree and a motion to intervene as parties plaintiff. This action is the result of rather protracted administrative proceedings and pre-suit negotiations between the United States and Ketchikan Pulp Company (hereinafter KPC). The underlying dispute in this case involves the effluent discharge requirements of the Federal Water Pollution Control Act, 33 U.S.C. § 1311, *et seq.* (hereinafter the Act or FWPCA).

It is alleged in the complaint that KPC was issued a permit under the Act in 1973 which was revised and extended on several occasions. This permit allowed KPC to discharge effluents from its mill subject to certain conditions. It is alleged that KPC

has failed to meet the standards set forth in its permit and is therefore in violation of the FWPCA.

The government filed its complaint alleging the above facts and simultaneously filed a proposed consent decree which had been negotiated with KPC. The consent decree provided a compromise plan to bring KPC into compliance with the Act. Slightly over two months after the filing of the complaint and the lodging of the consent decree the intervenors moved to intervene in the action. These motions for entry of the consent decree and to intervene come on the eve of the first date for performance by KPC under the decree.

The intervenors are three organizations which have alleged in their complaint that their members "use and depend upon the waters of the United States for food supply, transportation, and recreation." Complaint in intervention ¶ 5. More specifically it is alleged that Trustees for Alaska has members who "derive a portion of their livelihood from commercial fisheries which may be impacted by defendant KPS's discharge." Complaint in intervention ¶ 1. It is further alleged on behalf of the Alaska Center for the Environment that "the waters which may be impacted by defendant KPC's discharge are used by members of the Alaska Center for recreation." Complaint in intervention ¶ 2.

Intervention in this case is sought on the basis of 33 U.S.C. § 1365(b)(1)(B) which provides:

"No action may be commenced . . . if the Administrator or State has commenced and is diligently prosecuting a civil or criminal action in a court of the United States, or a State to require compliance with the standard, limitation, or order, but in any such action in a court of the United States any citizen may intervene as a matter of right."

1. At oral argument counsel for KPC challenged the veracity of the crucial allegations in the complaint motion, as all other pleading issues must be decided on the basis that well pleaded allegations must be taken as true. Any factual

For purposes of this section "citizen" means a person having an interest which is or may be adversely affected. 33 U.S.C. § 1365(g).

[1] The only sensible reading of this section compels the court to conclude that intervention of right without prior notice is to be allowed if all the prerequisites to such intervention are met. *State of Ohio ex rel. Brown v. Callaway,* 497 F.2d 1235, 1242 (6th Cir. 1974).

The first requirement for such intervention is that of standing. In the present case the definition of "citizens" who may intervene clearly is an attempt by Congress to authorize intervention to the broadest extent allowable under *Sierra Club v. Morton,* 405 U.S. 727, 92 S.Ct. 1361, 31 L.Ed.2d 636 (1972). *See Montgomery Environmental Coalition v. Fri,* 366 F.Supp. 261, 263–64 (D.D.C.1973). Two of these intervenors meet the test for standing. Both Trustees for Alaska and the Alaska Center for the Environment allege that their members have suffered a specific injury as the result of KPC's acts.[1] This is sufficient injury in fact under *Sierra Club.* This result is not altered by the Ninth Circuit decision of *NRDC v. EPA,* 507 F.2d 905 (9th Cir. 1974). In that case standing was found to be lacking under the *Sierra Club* standard. However, it appears that there were no allegations of injury to individual members of the groups seeking to sue therein. Thus, that case is inapposite.

The Natural Resources Defense Council, however, has only alleged a generalized interest that is insufficient to confer standing upon it. Petitioner will be allowed time in which to amend the complaint in intervention to cure this defect if it is possible to do so.

Having concluded that at least two of these intervenors have the requisite standing to intervene as a matter of right the court must look to other factors involved in a Rule 24(a)(1) intervention. The first and

issue on standing will have to await a motion for summary judgment. *U. S. v. SCRAP,* 412 U.S. 669, 688–90, 93 S.Ct. 2405, 37 L.Ed.2d 254 (1973).

most formidable hurdle is that of timeliness. KPC strongly asserts that the intervenors have been dilatory in this petition and that intervention at this late date should not be allowed.

■ It is clear that an essential prerequisite for intervention is a timely application. KPC points to the fact that extensive administrative hearings and public hearings occurred in this case without any input from intervenors. Additionally KPC points to the time which has elapsed since this complaint was filed as evidence of delay.

As to the first point intervenors have asserted two replies. They first contend that until the recent past it appeared as if KPC would be required to meet the FWPCA standards and they, therefore, had no need to intervene. As a second basis they assert that there were no hearings at which they could have intervened.

■ The court concludes that any pre-suit inaction does not preclude intervention in this case. The FWPCA confers upon a "citizen" the right to intervene in any enforcement action in which he has an interest. It does not make exhaustion of administrative remedies a prerequisite to such intervention. While intervenors might have been well advised to attempt to persuade the EPA on an administrative level that strict compliance with the FWPCA was proper, the lack of such an attempt does not condition its right to intervene.

Nor does the court find that the intervenors post-suit activities have been unduly protracted. This suit was filed on November 15, 1976. The motion to intervene occurred slightly over two months thereafter. KPC objects to this motion at this time because its duties under the proposed consent decree begin upon March 1, 1977. Several factors mitigate against KPC's position.

The first is an objective look at the activity of intervenors. Following the filing of the complaint intervenors made comments upon the consent decree as they properly were allowed to do. As a predicate to their ability to obtain sufficient information to comment intelligently and indeed to survey their legal position they were required to wait some time. The information they received was voluminous but they rapidly made comments and attempted to intervene after receiving the information. In the course of most litigation a period of only slightly over two months would not be sufficient to render this motion untimely.

KPC's response to this argument is that this litigation is not normal as a consent decree was filed the same day as the complaint and said decree is to take effect at this time. It contends that intervention at this time will jeopardize the carefully constructed negotiations between the government and itself. The court cannot accept this scenario. It is true that to some extent this is the eleventh hour in this case but it is KPC and the government which are controlling the clock.

The right of citizens to intervene in FWPCA cases was granted by Congress on a broad scope. This apparently was in recognition of the fact that the agencies involved might not always prosecute to the fullest extent possible or protect all interests. It would seem to be a frustration of the clear intent of Congress to allow a complaint and consent decree to be simultaneously filed with the consent decree to become effective at an early date and then object to intervention on the basis of timeliness. In this manner the citizen intervention provision could be rendered nugatory.[2]

In short, KPC should have known of the possibility of intervention under the FWPCA. In anticipation of this possibility they should have structured the proposed consent decree so as to allow time for this procedure. They cannot use their failure to do so as an objection to intervention.

---

**2.** It should be noted that KPC has itself forced the issue of timeliness to be decided at this late date by failing to move for entry of the consent decree until the eve of its effectiveness. In-deed, it was necessary for KPC to request an order shortening time on this motion or under local rules it would have been heard not before March 8, 1977, at the earliest.

**108**

The court does not find the cases cited by KPC for the proposition that intervention is improper if its only purpose is to bar entry of a consent decree to be on point. They are factually distinguishable in that the lengths of time therein involved were usually considerably longer than the present time period. They are further distinguishable on the basis that those cases involved permissive intervention rather than intervention as a matter of right. The one case dealing with this latter distinction held that the weight to be accorded the timeliness factor should be judged by which type of intervention was involved as the interests of an intervenor of right would be more seriously impaired by a finding of untimeliness. *EEOC v. United Airlines,* 515 F.2d 946, 949 (7th Cir. 1975).

In a case involving similar legislation one court has stated that citizen groups are not to be treated as nuisances or troublemakers but rather as welcome participants in the vindication of environmental interests. *Friends of the Earth v. Carey,* 535 F.2d 165, 172 (2d Cir. 1976). This court agrees with that assessment of the Congressional intent and will allow intervention in this case.

While the court sympathizes with the community of Ketchikan which is put into a temporary state of uncertainty by this intervention the clear intent of Congress mandates this result.

The government, while agreeing that intervention is proper, seeks an order limiting the rights of the intervenors. Nothing in the FWPCA supports this theory of limited intervention. While they clearly are subject to the normal proscriptions of the Federal Rules regarding discovery and may not make oppressive demands the court will not prejudge their intentions for entry into this case.

At oral argument counsel for intervenors stated that it could inform the court of its position regarding the proposed consent decree within two weeks. In order to attempt to salvage the proposed decree if possible the court requires that intervenors advise the court of its position in writing by March 14, 1977.

Accordingly IT IS ORDERED:

1. THAT the motion to intervene as plaintiffs in this action of Trustees for Alaska and the Alaska Center for the Environment is granted. The Clerk may file their complaint in intervention.

2. The Natural Resources Defense Council may file an amended petition for intervention and motion in conformity with this opinion if such is possible and it desires to do so.

3. Defendants may wait until 15 days following this court's disposition of the proposed consent decree to answer the complaint in intervention.

4. Intervenors will report to the court and the other parties in writing their position on the proposed consent decree by March 14, 1977.

5. A hearing on the entry of the proposed consent decree is scheduled for March 16, 1977, at 2:30 p. m., at Anchorage, Alaska.