**J. E. BRENNEMAN COMPANY, a Pennsylvania Corporation**

v.

**Jack J. SCHRAMM, Regional Administrator, Environmental Protection Agency, Region III.**

Civ. A. No. 78–2028.

United States District Court, E. D. Pennsylvania.

Aug. 7, 1978.

John T. Clary, Philadelphia, Pa., for plaintiff.

Robert S. Forster, Jr., Philadelphia, Pa., Marina J. Liacouras, Asst. Regional Counsel, U. S. Environmental Protection Agency, Region III, Philadelphia, Pa., for defendant.

## MEMORANDUM

RAYMOND J. BRODERICK, District Judge.

█ Plaintiff, J. E. Brenneman Company, is a construction company which entered into a contract in 1973 with the Derry Township Municipal Authority (DTMA) to build a wastewater treatment plant (Derry Plant). The Derry Plant is now substantially completed, having been in operation since March 1977. The plaintiff filed this complaint in mandamus against Jack J. Schramm, the Regional Administrator (Administrator) of the Environmental Protection Agency, Region III (EPA), requesting that this Court award the plaintiff "reimbursement for its losses incurred" and enter an order enjoining EPA from disbursing grant monies until there has been an accounting by the General Accounting Office (GAO) in connection with the grant for the construction of the Derry Plant.[1] The plaintiff alleges that the Administrator failed to perform two duties mandated by the Federal Water Pollution Control Act Amendments of 1972 (FWPCA), 33 U.S.C. § 1251 et seq. Specifically, the plaintiff claims that the Administrator (1) approved the Derry Plant grant even though the bid specifications were restrictive, in violation of 33 U.S.C. § 1284(a)(6); and (2) failed to require DTMA to provide for an appropriate industrial cost recovery system prior to approval of the grant, in violation of 33 U.S.C. § 1284(b)(1)(B). Jurisdiction is based on 28 U.S.C. § 1361.[2]

Presently before the Court is plaintiff's motion for a preliminary injunction[3] to enjoin (1) payment by the Administrator to DTMA of the balance due under the grant for construction of the Derry Plant; and (2) payment by the Administrator to DTMA of the sum of $2.8 million authorized by Congress for a collector sewer system in Derry Township. A hearing was held in connection with this motion on July 17, 1978. Having considered the evidence and the arguments presented, for the reasons hereinafter set forth, we have determined that the plaintiff's motion for a preliminary injunction will be denied.

The evidence presented in connection with the motion may be summarized as follows. In the early 1970's, sewage from

---

1. For a complete summary of the relief requested in the complaint, see *infra* p. 274.

2. Jurisdiction in the complaint is also based on 28 U.S.C. § 2201 and 5 U.S.C. § 702. However, it is well settled that neither 28 U.S.C. § 2201, which authorizes federal courts to grant declaratory relief in appropriate cases, nor 5 U.S.C. § 702 of the Administrative Procedures Act, can serve as an independent basis for federal jurisdiction. *Skelly Oil Company v. Phillips Petroleum Company,* 339 U.S. 667, 671–77, 70 S.Ct. 876, 94 L.Ed. 1194 (1950) (28 U.S.C. § 2201); *Ragoni v. United States,* 424 F.2d 261, 264 (3d Cir. 1970) (28 U.S.C. § 2201); *Chaudoin v. Atkinson,* 494 F.2d 1323, 1328 (3d Cir. 1974) (5 U.S.C. § 702); *Zimmerman v. United States Government,* 422 F.2d 326, 330–31 (3d Cir.), cert. denied, 399 U.S. 911, 90 S.Ct. 2200, 26 L.Ed.2d 565 (1970) (5 U.S.C. § 702).

3. The plaintiff's motion for preliminary injunction requests that this Court order:

> (i) the plaintiff's complaint and supporting evidence to be referred to the GAO;
> (ii) EPA to respond to the plaintiff's complaint;
> (iii) the GAO to render a prompt decision together with a full apportionment and accounting, based on a full and adequate review of the evidence;
> (iv) EPA to withhold payment of all funds to DTMA until the GAO has furnished its decision and/or accounting; and
> (v) EPA to disburse funds after the GAO decision and/or accounting in conformity with the decision and/or accounting.

At the July 17, 1978 hearing in connection with the motion the plaintiff submitted a revised order, which proposes that the Court enjoin the Administrator from paying or transmitting funds to DTMA, or the Commonwealth of Pennsylvania on behalf of DTMA.

the Derry Township area was treated in a private facility owned by the Hershey Sewage Company. By 1971, growth in the area had made this facility inadequate, and the DTMA was formed to design, finance and construct a wastewater treatment plant.

On March 7, 1973, the EPA offered DTMA a grant which would provide federal funding to cover 75% of the eligible costs of designing and constructing the wastewater treatment plant (Derry Plant). It is the position of EPA that it approved the grant to DTMA on February 28, 1973. The grant was awarded pursuant to the Federal Water Pollution Contract Act Amendments of 1972 (FWPCA), 33 U.S.C. § 1251, *et seq.*, to be administered through the EPA. The original amount provided by the grant agreement was $14,614,460, which amount was subsequently reduced to $11,957,400.

The plaintiff submitted to DTMA the lowest bid for constructing the Derry Plant. However, on the night of July 26, 1973, following the tabulation of all the bids, a representative of the plaintiff informed DTMA that it had made an error in its bid and asked that it be permitted to withdraw the bid from consideration. DTMA did not permit withdrawal of the bid, taking the position that withdrawal of the bid would constitute a violation of Pennsylvania law, since the bid was less than 10% lower than the next lowest bid. In an attempt to reduce its bid mistake loss, the plaintiff sought to substitute equipment it considered comparable to the Envirotech equipment which had been specified. Such substitution of equipment was refused by DTMA.

On December 13, 1973, the plaintiff approached the EPA with its contention that the bid specifications were impermissibly restrictive in violation of § 1284(a)(6) of the FWPCA. The EPA advised the plaintiff that its attack on the specifications was filed too late for consideration. In 1974, the plaintiff instituted a civil action against DTMA, the project's consulting engineers and Envirotech Corporation in the United States District Court for the Middle District of Pennsylvania. This lawsuit was settled by an agreement entered into on April 26, 1976, which included a general release by each party of all claims, causes of action and judgments which had or could have been pursued. The settlement agreement provided that approval by EPA was required, and this resulted in alterations to the Derry Plant with additional federal funding.

On July 15, 1977, the plaintiff submitted a request for monetary relief to the EPA. On September 16, 1977, the EPA rejected this claim on the ground that no regulatory measures were available through which the relief sought could be afforded.

The construction of the Derry Plant is now essentially complete, and all but 5% of the construction grant funds have been paid to DTMA. Payment of the remaining 5% cannot be made until a final inspection of the plant and a final audit. Final payment is expected in about three or four months.

Concurrent with the construction of the EPA-funded Derry Plant, DTMA also constructed a system of collector sewers which it financed without any federal participation. In its passage of the Clean Water Act of 1977, Pub.L. 95–217, Congress enacted a special provision authorizing the expenditure of federal funds not to exceed $2.8 million for a collector sewer system. The legislative history concerning this provision of the Act indicates that it may have been intended for the sole benefit of Derry Township, Pennsylvania (Conference Report No. 95–830, p. 111, December 6, 1977). At present, however, no application for federal funds has been received by the EPA from Derry Township for a collector sewer system.

At the July 17, 1978 hearing, the plaintiff presented the testimony of Thomas Glennon, a vice president of the plaintiff and former project manager for the Derry Plant. Mr. Glennon testified that he complained to the EPA in 1976 concerning irregularities in the grant to DTMA. The EPA conducted an investigation and its investigative report was introduced into evidence. The investigative report, dated No-

vember 21, 1977, contains a statement[4] that the investigation disclosed "evidence of possible procurement irregularities, restrictive specifications which eliminated competitive bidding and patent fraud. In addition, the investigation had disclosed evidence of other irregularities and possible fraud." Mr. Glennon also testified that the plaintiff did not realize that there were restrictive bid specifications prior to submitting its bid in 1973. He stated that the Derry Plant is now substantially complete, and has been in operation since March 1977, and although more than $1 million has been spent in modifications of the original design, its performance is still not up to standard.

In addition to Mr. Glennon's testimony, the plaintiff introduced into evidence five documents, (1) the investigative report heretofore described; (2) the grant agreement between the EPA and DTMA; (3) an EPA mailgram; (4) a letter from EPA to DTMA; and (5) an amendment to the Derry Plant grant. The grant agreement reflects that the EPA offered the grant to DTMA on March 7, 1973, and that DTMA accepted the grant on March 30, 1973. General Condition 3 of the grant agreement provides in relevant part:

Grant payments are subject to the . . following:

(a) The grantee shall submit in conformance with the Regulations an acceptable . . . industrial cost recovery system . . . for approval prior to final inspection of the completed facilities.

(b) Final payment will be made upon completion of final inspection by the [EPA] and compliance by the grantee with all applicable Regulations and the Grant Agreement.

Special Condition 2 of the grant agreement provides:

General Condition Number 3(a), industrial cost recovery system, must be in conformance with the Regulations, 40 C.F.R. Chapter I, subchapter B, Part 38.835–5.

The EPA mailgram which was received by DTMA on November 2, 1973 states in relevant part:

Part B of the offer and acceptance document for contracts 1A, 1B, 2, 3, 4, and.5 of the project . . . are approved with the following revisions:

\* \* \* \* \* \*

The contracts may now be awarded to the lowest bidders as indicated by the proposals you have submitted.

The letter from EPA received by DTMA on December 4, 1973 contained basically the same information as the mailgram.

The amendment to the DTMA grant, dated December 4, 1973, stated that the grant was being decreased by $2,657,020, "due to under-runs in construction."

The defendant presented one witness, James W. Newsome, who has worked at the EPA for seven years. He testified that in 1973 he coordinated several projects, including the Derry Plant, and that the EPA approved funding for the Derry Plant on February 28, 1973. He stated that the November 1973 mailgram and the letter of December 1973 introduced by the plaintiff do not refer to the EPA approval of the grant, but rather to its approval of the construction contracts. He also testified that Congress authorized the EPA to reimburse DTMA up to $2.8 million for collector sewers, that the collector sewer system has been installed, and that DTMA is in the process of applying for this grant, but that the EPA has not yet received the application. Mr. Newsome also testified that the EPA approved the Derry Plant grant on February 28, 1973 in order to avoid the necessity of including an industrial cost recovery provision pursuant to 33 U.S.C. § 1284(b)(1)(B), which legislation mandates industrial cost recovery for grants approved after March 1, 1973. He testified that the above quoted portion of General Condition

4. The report also states:
   *Coordination with Assistant U. S. Attorney*
   On March 17, 1977, Paul Killion, Assistant U. S. Attorney, Harrisburg, Pennsylvania, was briefed on the investigation of the EPA construction grant to DTMA. Killion expressed an interest in the matter, but advised that he could better evaluate the prosecutive merits of the case after he reads the report of investigation.

3 of the grant agreement referred to EPA regulations which were in effect on February 28, 1973, the day the grant was approved, and that the regulations then in effect did not mandate that industrial users repay a proportionate share of the cost funded through the federal grant. It was his testimony that the applicable regulations pertained to reimbursement by industrial users of only the proportionate share of the plant's cost which was provided by the local governments.

Mr. Newsome concluded his testimony by acknowledging that 33 U.S.C. § 1284(a)(6) prohibits restrictive specifications in EPA approved construction contracts, but stated that it was not until December 19, 1973 that the plaintiff complained to the EPA that the bid specifications were in violation of § 1284 of the FWPCA. The plaintiff contends in this proceeding that the Administrator approved the Derry Plant grant even though the bid specifications were restrictive, in violation of his duty pursuant to 33 U.S.C. § 1284(a)(6).

■ To obtain a preliminary injunction, the moving party must demonstrate (1) a reasonable probability of eventual success in the litigation, and (2) that the movant will be irreparably injured *pendente lite* if relief is not granted. While the burden rests upon the moving party to make the above two requisite showings, the District Court must take into account whenever relevant (3) the possibility of harm to other interested persons from the grant or denial of the injunction, and (4) the public interest. *Constructors Association of Western Pennsylvania v. Kreps,* 573 F.2d 811 at 814 (3d Cir. 1978).

Thus we must first determine whether the plaintiff has demonstrated a reasonable probability of eventual success in the litigation. After a careful consideration of the testimony and arguments presented in this case, we conclude that the plaintiff has not demonstrated a reasonable probability of eventual success in this litigation.

The plaintiff has filed a complaint which is labeled "complaint in mandamus". In this complaint the plaintiff requests the Court (1) to award the plaintiff reimbursement for its losses incurred because of improper conduct on the part of the Administrator, DTMA and Envirotech; and (2) to enter an order directing that there be no disbursement of grant monies by EPA to DTMA until there has been an accounting by the General Accounting Office (GAO), which establishes the extent:

(i) of superfluous Envirotech equipment incorporated into the Derry Plant, and its cost;

(ii) of oversized Envirotech equipment in the Derry Plant and its cost;

(iii) to which the plant was designed larger than necessary in order to accommodate the superfluous and oversized equipment, and the amount such excessive size added to the cost of construction;

(iv) of equipment in the Plant which is required solely for treating the wastewater from Hershey Food Corporation;

(v) to which the plaintiff has had to absorb the superfluous and oversized equipment costs, and the cost to the plaintiff of not being permitted to use equipment of proper size; and

(vi) of an industrial cost recovery system which will create a fund to reimburse the public and the plaintiff for the amount the GAO accounting discloses to be necessary.

The complaint alleges jurisdiction based on 28 U.S.C. § 1361.[5] Section 1361 provides:

The district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff.

There is a grave question as to whether this Court has jurisdiction in mandamus pursuant to § 1361. However, neither party has raised the issue and there has been

---

5. *See* n. 2, *supra.*

no briefing or oral argument concerning jurisdiction. We shall therefore reserve final determination of the Court's power to issue mandamus in this matter until the parties have had an opportunity to brief the question. We have determined, however, that the plaintiff has failed to demonstrate a reasonable probability of success in establishing that this Court has jurisdiction to entertain its "complaint in mandamus".

■ It is well settled that a requisite for jurisdiction in the United States District Court on the basis of § 1361 is an allegation that the defendant officer or employee of the United States owes the plaintiff a legal duty which is a specific, plain, ministerial act "devoid of the exercise of judgment and discretion." *Commonwealth of Pennsylvania v. National Association of Flood Insurers*, 520 F.2d 11, 25–26 (3d Cir. 1975); *Spock v. David*, 469 F.2d 1047, 1050 (3d Cir. 1972); *Richardson v. United States*, 465 F.2d 844, 849 (3d Cir. 1972); *Carter v. Seamans*, 411 F.2d 767, 773 (5th Cir. 1969). An act is ministerial only when its performance is positively commanded and so plainly prescribed as to be free from doubt.

■ The plaintiff in this action is asking the Court to enjoin the disbursement of funds by the Administrator until the GAO has made an investigation and an accounting in connection with the construction of the Derry Plant.[6] There is no allegation in the complaint nor was there testimony at the hearing concerning a federal statute or regulation setting forth a duty owed to the plaintiff by the GAO to make such an investigation and/or an accounting. A reading of the complaint and the relief requested in the complaint makes it obvious that the accounting by the GAO is the action which the plaintiff is requesting this Court to indirectly order through the device of enjoining the distribution of funds by the Administrator until such investigation and/or accounting is made. An order en-

joining the distribution of funds would have no time limitations in the context of the plaintiff's complaint unless the GAO were ordered to perform this accounting. No statute or regulation has been called to our attention whereby the GAO owes the plaintiff a legal duty to perform such ministerial act.

The plaintiff in its complaint alleges that the Administrator of the EPA violated 33 U.S.C. § 1284(a)(6), which provides:

(a) Before approving grants for any project for any treatment works under [the FWPCA] the Administrator shall determine—

(6) that no specification for bids in connection with such works shall be written in such a manner as to contain proprietary, exclusionary, or discriminatory requirements other than those based upon performance . . . .

There is nothing in the complaint asking the Court to mandate the Administrator to perform such a duty at this time. Furthermore, requiring the Administrator to perform this duty at this time would appear to be untimely and moot in view of the fact that the grant was awarded in 1973 and the Plant has been constructed.

The plaintiff's complaint also alleges that the Administrator violated 33 U.S.C. § 1284(b)(1)(B), which provides:

(b)(1) Notwithstanding any other provision of this subchapter, the Administrator shall not approve any grant for any treatment works under [the FPWCA] after March 1, 1973, unless he shall first have determined that the applicant . . .

(B) has made provision for the payment to such applicant by the industrial users of the treatment works, of that portion of the cost of construction of such treatment works . . . which is allocable to the treatment of such industrial wastes to the extent attributable to the Federal share of the cost of construction . . . .

---

**6.** The plaintiff also asks the Court to award the plaintiff "reimbursement for its losses incurred." However, it is well settled that an action in mandamus will not lie to compel the payment of money to reimburse a plaintiff for "losses incurred." *United States v. Common-*

*wealth of Pennsylvania*, 394 F.Supp. 261, 265 (M.D.Pa.1975) (Herman, J.); *Brown v. United States*, 365 F.Supp. 328, 338 (E.D.Pa.1973) (Newcomer, J.), *aff'd in part, remanded in part on other grounds*, 508 F.2d 618 (3d Cir. 1974).

There is a question as to whether § 1284(b)(1)(B) prescribes a duty owed to the plaintiff. However, there is nothing in the complaint asking the Court to mandate the Administrator to perform such a duty at this time. Furthermore, at the preliminary injunction hearing, another question was raised as to whether this statute, which is applicable only to grants approved by EPA after March 1, 1973 is applicable to the Derry Plant grant, which grant EPA contends was approved on February 28, 1973.

■ In addition to all the jurisdictional problems heretofore discussed, there are other questions presented which lead us to conclude that the plaintiff has failed to demonstrate a reasonable probability of eventual success on the merits. The plaintiff's first contention is that the Administrator violated his duty pursuant to 33 U.S.C. § 1284(a)(6) by approving the Derry construction grant although it contained restrictive specifications. Since the construction has been substantially completed, the only type of relief which might possibly be available is an award of monetary damages. Monetary damages, however, are unavailable in mandamus actions brought pursuant to § 1361. *United States v. Commonwealth of Pennsylvania*, 394 F.Supp. 261, 265 (M.D. Pa.1975) (Herman, J.); *Brown v. United States*, 365 F.Supp. 328, 338 (E.D.Pa.1973) (Newcomer, J.), *aff'd in part, remanded in part on other grounds*, 508 F.2d 618 (3d Cir. 1974).

The plaintiff's second contention is that the Administrator violated his duty pursuant to 33 U.S.C. § 1284(b)(1)(B) by failing to require DTMA to institute an industrial cost recovery system. However, it is clear that § 1284(b)(1)(B) applies only to grants approved by the EPA after March 1, 1973. Based on the evidence and the arguments presented at the July 17, 1978 hearing, we have determined that the plaintiff has not demonstrated a reasonable probability of eventual success in establishing that this grant was approved by the EPA after March 1, 1973. The plaintiff introduced documents at the hearing which show that the grant was offered to DTMA on March 7, 1973, accepted by DTMA on March 30,

1973 and modified in November, 1973. On the other hand, the Administrator presented evidence that the grant was approved by the EPA on February 28, 1973.

In the event the evidence should establish that the grant was approved by the EPA on February 28, 1973, as the Administrator contends, it would appear that the statute and the regulations enacted pursuant to the statute would not be applicable to the grant. In the event the evidence would establish that the grant was approved on February 28, 1973, then the industrial cost recovery would not cover the cost funded through the federal grant but would apply only to the local governments' portion of the costs. This Court, however, was not presented with evidence showing the industrial cost recovery provisions, if any, adopted by DTMA.

■ Moreover, the Administrator asserts that the plaintiff may not have standing to raise the issues presented in its complaint. Standing requires a party must show injury in fact within a protected zone of interest. *Association of Data Processing Service Organization v. Camp*, 397 U.S. 150, 90 S.Ct. 827, 25 L.Ed.2d 184 (1970).

The plaintiff relies upon the discussion of standing presented by the Circuit Court for the District of Columbia in *Scanwell Laboratories, Inc. v. Shaffer*, 137 U.S.App.D.C. 371, 424 F.2d 859 (1970), in support of the right of a prime contractor to protest payment of federal funds pending an accounting of project expenditures. In *Scanwell*, an unsuccessful bidder on a federal government contract was permitted to challenge the actual award of the contract. The unsuccessful bidder was found to have suffered an injury in fact and was entitled to bring suit in the public interest as a "private attorney general." *Scanwell*, however, is inapplicable to the case at bar. The plaintiff is not an unsuccessful bidder but a prime contractor who submitted an offer for construction of a sewage treatment facility in full cognizance of the provisions of the bid specifications. More important, the Court in *Scanwell* was faced with a com-

plaint of government error at a point early enough in the procurement process to permit correction of the error. Here a change of specifications would serve little purpose, since construction has been completed. Thus, the public interest which the *Scanwell* court found as a basis for conferring standing may not be applicable. Damages, if any, would be claimed by the plaintiff rather than the public. *See Northland Equities, Inc. v. Gateway Center Corp.*, 441 F.Supp. 259 (E.D.Pa.1977).

The plaintiff also has not shown a reasonable probability that it will eventually succeed in establishing that it has standing to establish a claim resulting from a violation of 33 U.S.C. § 1284(a)(6). Although the plaintiff may have suffered a loss through participation in this contract, it has not shown that it is included in the zone of interest meant to be protected by § 1284(a)(6). The non-restrictive specifications mandated by this statute might be found to have been enacted solely for the benefit of the government for the purpose of obtaining the lowest construction cost possible. If any segment of the marketplace is also intended to benefit from this mandate, it might be limited to the suppliers of equipment whose products are excluded.

■ Plaintiff's contention that it has standing to challenge the absence of an industrial cost recovery system in DTMA's grant is also uncertain of success on the merits. There is no provision for return of funds from industry to a construction contractor, either directly or indirectly. The plaintiff may not have a personal stake or interest in the development of an industrial cost recovery system by DTMA. It may be that the plaintiff is seeking only "to employ a federal court as a forum in which to air his generalized grievances about the conduct of the government", and such a basis for standing is not sufficient. *United States v. Richardson*, 418 U.S. 166, 175, 94 S.Ct. 2940, 2946, 41 L.Ed.2d 678 (1974); *Flast v. Cohen*, 392 U.S. 83, 105, 88 S.Ct. 1942, 20 L.Ed.2d 947 (1968).

Another obstacle to the plaintiff's ultimate success in this litigation may arise out of the settlement agreement signed by the plaintiff and DTMA, among others, in resolution of legal actions filed by the plaintiff in the United States District Court for the Middle District of Pennsylvania. Although a copy of the settlement agreement has been attached to the Administrator's brief in this matter, it cannot be determined from a mere reading of the settlement agreement whether the settlement agreement was intended as satisfaction to the plaintiff for any claims in this mandamus action. *See St. Joe Paper Company v. Roofer's Union Local No. 30*, No. 76–1975 (E.D.Pa. July 12, 1978) (Fullam, J.).

The last obstacle to the plaintiff's probability of success in this action is that the plaintiff has failed to include DTMA, the recipient of the EPA construction grant, as a defendant. The Administrator contends that the DTMA is an indispensable party to the action within the meaning of Fed.R. Civ.P. 19(b). The basic principle embodied in the rule was articulated by the Supreme Court well over a century ago in *Shields v. Barrow*, 58 U.S. (17 How.) 130, 139–41, 15 L.Ed. 158:

> Persons [are indispensable parties] who do not only have an interest in the controversy, but an interest of such a nature that a final decree cannot be made without either affecting that interest, or having the controversy in such a condition that its final termination may be wholly inconsistent with equity and good conscience.
>
> \*       \*       \*       \*       \*       \*
>
> . . . [A] circuit court can make no decree affecting the rights of an absent person and can make no decree between the parties before it, which so far involves or depends upon the rights of an absent person, that complete and final justice cannot be done between the parties to the suit without affecting those rights.

■ As the plaintiff has requested a suspension of the disbursement of grant monies by EPA to DTMA pursuant to the

278

construction grant or the $2.8 million special legislation for collector sewers, DTMA is certain to be interested in the subject matter of the suit since the relief requested would affect DTMA. Thus, DTMA may be an indispensable party which the plaintiff has failed to name as a defendant. In light of these problems, many of which the plaintiff has failed to address, it is clear that the plaintiff has failed to demonstrate a reasonable probability of eventual success in the litigation.

■ The second element the Court must consider when deciding whether a preliminary injunction should issue is whether the movant has demonstrated that it will be irreparably injured *pendente lite* if relief is not granted. Inasmuch as the plaintiff's injunction request concerns payment of grants to DTMA, it is difficult to perceive how the plaintiff will be injured *pendente lite* by the Administrator's making such grants to DTMA. We find, therefore, that the plaintiff has failed to demonstrate that it would be irreparably injured *pendente lite* if relief is not granted. *See Concerned Citizens of Bushkill Township v. Costle*, 11 ERC 1574, 1579 (E.D.Pa.1978) (Troutman, J.).

We next consider the possibility of harm to other persons who may be affected by the injunction. Since the preliminary injunction requests that the EPA be required to withhold payments which may be due to DTMA, DTMA would obviously be harmed by the withholding of such grants. According to the testimony presented to the Court, no federal funds are due to DTMA from EPA at the present time. However, in about three or four months DTMA may be eligible to receive the 5% balance remaining under the Derry Project grant. Moreover, although EPA has not received DTMA's request for reimbursement of its expenses in connection with the collection sewer system, it is possible that DTMA would be harmed in the event EPA is enjoined.

We recognize that the EPA conducted an investigation and issued a report in 1977 which concluded that there was evidence of possible procurement irregularities, restrictive specifications which eliminated competitive bidding and patent fraud. In addition, the investigation has disclosed possible fraud. The Court understands that the investigative report has been turned over to the United States Attorney for the Middle District of Pennsylvania.

Accordingly, an Order will be entered this date denying the plaintiff's motion for a preliminary injunction.

This memorandum is in lieu of findings of fact and conclusions of law pursuant to Rule 52(a) of the Federal Rules of Civil Procedure.