J. E. BRENNEMAN COMPANY, A Pennsylvania Corporation, Plaintiff,

v.

Jack J. SCHRAMM, Regional Administrator, Environmental Protection Agency, Region III, Defendant.

Civ. A. No. 78–2028.

United States District Court,
E. D. Pennsylvania.

Aug. 6, 1979.

John T. Clary, Andrew F. Mimnaugh, Clary, Mimnaugh & McGonigle, P. C., Philadelphia, Pa., for plaintiff.

Peter F. Vaira, U. S. Atty., Robert S. Forster, Asst. U. S. Atty., Philadelphia, Pa., for defendant.

## MEMORANDUM

BRODERICK, District Judge.

Plaintiff, J. E. Brenneman Company, a construction company, entered into a contract in 1973 with the Derry Township Municipal Authority (DTMA) to build a waste water treatment plant (Derry Plant), which plant has been in operation since March, 1977. In its amended complaint, which contains two counts, the plaintiff seeks mandamus against Jack J. Schramm, the Regional Administrator (Administrator) of the Environmental Protection Agency, Region III (EPA). In Count I of its amended complaint, the plaintiff, basing jurisdic-

tion on 33 U.S.C. § 1365(a)(2),[1] alleges that the Administrator failed to perform a nondiscretionary duty in that he failed to require DTMA to submit an industrial cost recovery system pursuant to 40 C.F.R. § 35.835–5 and requests the Court to order the Administrator to withhold final payment until an industrial cost recovery system is received from DTMA. In Count II of its amended complaint, the plaintiff, basing jurisdiction on 33 U.S.C. § 1365(a)(2) and 28 U.S.C. § 1361, alleges that the Administrator failed to make a determination that the specifications for the Derry Plant precluded any proprietary, exclusionary or discriminatory requirements pursuant to 33 U.S.C. § 1284(a)(6) and requests the Court to order the Administrator to withhold payment until an accounting is submitted by DTMA covering such things as superfluous equipment in the Derry Plant, the excess costs resulting therefrom, and the cost of equipment in the Derry Plant installed for the sole purpose of handling Hershey Foods Corporation's industrial waste, and including therein an industrial cost recovery system.

Presently before the Court is the defendant's motion to dismiss the amended complaint for lack of subject matter jurisdiction.[2] For the reasons hereinafter set forth, the Court will grant the defendant's motion to dismiss.

■■ The plaintiff has labeled its complaint "First Amended Complaint in Mandamus" and in Count I bases jurisdiction on

33 U.S.C. § 1365(a)(2) and in Count II bases jurisdiction on both 33 U.S.C. § 1365(a)(2) and 28 U.S.C. § 1361. Section 1365(a)(2) of Title 33 is section 505(a)(2) of the Federal Water Pollution Control Act (FWPCA), which provides:

(a) Except as provided in subsection (b) of this section, any citizen may commence a civil action on his own behalf—

.        .        .        .

(2) against the Administrator where there is alleged a failure of the Administrator to perform any act or duty under this chapter which is not discretionary with the Administrator.

This section specifically limits jurisdiction in such mandamus actions to those alleging a failure of the Administrator to perform an act or duty required in the FWPCA which is "not discretionary." *See Sierra Club v. Train,* 557 F.2d 485 (5th Cir. 1977); *Sun Enterprises, Ltd. v. Train,* 532 F.2d 280 (2d Cir. 1976). Section 1361 of Title 28 provides:

The district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff.

It is well settled that a requisite for jurisdiction in the United States District Court on the basis of § 1361 is an allegation that the defendant officer or employee of the United States owes the plaintiff a legal duty which is a specific, plain, ministerial

1. The plaintiff also attempts to base jurisdiction on the Administrative Procedure Act, 5 U.S.C. § 701 *et seq.* It is well settled in our Third Circuit that the Administrative Procedure Act cannot serve as an independent basis for federal jurisdiction. *Chaudoin v. Atkinson,* 494 F.2d 1323, 1328 (3d Cir. 1974); *Zimmerman v. United States,* 422 F.2d 326, 330–31 (3d Cir.), *cert. denied,* 399 U.S. 911 (1970); *Califano v. Sanders,* 430 U.S. 99, 97 S.Ct. 980, 51 L.Ed.2d 192 (1977).

2. On August 7, 1978, prior to the plaintiff's filing its amended complaint, the Court, having held a hearing on plaintiff's motion for a preliminary injunction, denied the preliminary injunction and ordered the parties to submit memoranda as to whether this Court had "jurisdiction in mandamus." 456 F.Supp. 269 (E.D. Pa.1978). As pointed out by this Court in its memorandum denying the preliminary injunction, *id.* at 272–73, the EPA conducted an investigation and issued a report in 1977 which concluded that there was evidence of possible procurement irregularities, restrictive specifications which eliminated competitive bidding, and possible fraud. The EPA investigation report was placed in the hands of the United States Attorney for the Middle District of Pennsylvania.

act "devoid of the exercise of judgment or discretion." *Commonwealth of Pennsylvania v. National Association of Flood Insurers,* 520 F.2d 11, 25–26 (3d Cir. 1975); *Spock v. David,* 469 F.2d 1047, 1050 (3d Cir. 1972); *Richardson v. United States,* 465 F.2d 844, 849 (3d Cir. 1972), *reversed on other grounds,* 418 U.S. 166, 94 S.Ct. 2940, 41 L.Ed.2d 678 (1974); *Carter v. Seamans,* 411 F.2d 767, 773 (5th Cir. 1969), *cert. denied,* 397 U.S. 941, 90 S.Ct. 953, 25 L.Ed.2d 121 (1970). An act is ministerial only when its performance is positively commanded and so plainly prescribed as to be free from doubt.

■ The amended complaint in Count I specifically alleges that the Administrator failed to require DTMA to submit an industrial cost recovery system pursuant to 40 C.F.R. § 35.835–5, which regulation provides:

(c) Where industrial wastes are to be treated by the proposed project, no grant may be awarded unless the applicant provides assurance satisfactory to the Regional Administrator that the applicant has, or will have in effect when the project will be operated, an equitable system of cost recovery. Such system of cost recovery may include user charges, connection fees, or such other techniques as may be available under State and local law. Such system shall provide for an equitable assessment of costs whereby such assessments upon dischargers of industrial wastes correspond to the cost of the waste treatment, taking into account the volume and strength of the industrial, domestic, commercial wastes, and all other waste discharges treated, and techniques of treatment required. Such cost recovery system shall produce revenues, in proportion to the percentage of industrial wastes, proportionately, relative to the total waste load to be treated by the project, for the operation and maintenance of the treatment works, for the amortization of the applicant's indebtedness for the cost of such treatment works, and for such additional costs as may be necessary to assure adequate waste treatment on a continuing basis.

Pursuant to this regulation, it appears that no grant may be awarded unless the applicant provides assurance satisfactory to the Administrator that the applicant has or will have in effect when the project is in operation an equitable system of cost recovery from dischargers of industrial waste. The complaint, however, specifically alleges that DTMA, in accepting the grant, contracted to submit to the Administrator an industrial cost recovery system in conformance with 40 C.F.R. § 35.835–5. This allegation in the complaint clearly indicates that the Administrator obtained from the grantee the "assurance" required by the regulation. It appears, therefore, that the plaintiff seeks to have this Court mandamus the Administrator to enforce the contract with the grantee—an action not mandated by the statute or the regulations.

■ Furthermore, it appears that the plaintiff does not have standing in connection with its request for mandamus in Count I. In connection with the plaintiff's assertion of jurisdiction under 33 U.S.C. § 1365(a)(2), the Court notes that this provision must be read in conjunction with 33 U.S.C. § 1365(g), the "standing" provision of that section of the FWPCA, which provides:

For the purposes of this section the term "citizen" means a person or persons having an interest which is or may be adversely affected.

The "interest" contemplated by § 1365(g) is a specific one to be measured by whether a person has suffered injury in fact under the FWPCA; a generalized interest in a matter is not sufficient to create standing. *United States v. Ketchikan Pulp Co.,* 74 F.R.D. 104, 106 (D.Alaska 1977); *see Commonwealth Edison Co. v. Train,* 71 F.R.D. 391 (N.D.Ill. 1976); *Stream Pollution Control Board v. United States Steel,* 62 F.R.D. 31 (N.D.Ind. 1974), *aff'd,* 512 F.2d 1036 (7th Cir. 1975). In discussing standing to initiate a citizen

suit under the FWPCA, the court in *Loveladies Property Owners Ass'n, Inc. v. Raab*, 430 F.Supp. 276 (D.N.J.1975), aff'd, 547 F.2d 1162 (3d Cir. 1976), *cert. denied*, 432 U.S. 906, 97 S.Ct. 2949, 53 L.Ed.2d 1077 (1977), relied upon the Supreme Court's decisions in *Sierra Club v. Morton*, 405 U.S. 727, 92 S.Ct. 1361, 31 L.Ed.2d 636 (1972), and *Association of Data Processing Service Organizations v. Camp*, 397 U.S. 150, 90 S.Ct. 827, 25 L.Ed.2d 184 (1970), in requiring a plaintiff to show direct and specific injury arising out of the act complained of. *See Montgomery Environmental Coalition v. Fri*, 366 F.Supp. 261, 264 (D.D.C.1973) (intent of Congress was to base standing requirements under § 1365(a)(2) upon those pronounced in *Sierra Club v. Morton*). In the present action, the plaintiff's only connection with the Derry Plant project was that of a general contractor for DTMA. It has no direct or specific interest in DTMA's preparation of a system of cost recovery and has alleged no injury-in-fact with regard to DTMA's alleged failure to prepare such a system. Its interest is no more than a general one shared in common with thousands of others. Such a generalized interest is not sufficient to confer standing; as stated by the Supreme Court in *Sierra Club v. Morton*:

> [A] mere "interest in a problem," no matter how longstanding the interest and no matter how qualified the organization . . . is not sufficient by itself to render the organization "adversely affected" . . . .

405 U.S. at 738–39, 92 S.Ct. at 1368, *see United States v. Richardson*, 418 U.S. 166, 94 S.Ct. 2940, 41 L.Ed.2d 678 (1974); *Frothingham v. Mellon*, 262 U.S. 447, 43 S.Ct. 597, 67 L.Ed. 1078 (1923). Furthermore, the provisions of 40 C.F.R. § 35.835–5(c) make clear that all costs recovered pursuant to an industrial cost recovery system would inure to the benefit of DTMA and the waste water treatment facilities constructed by DTMA, and thus, to the users of DTMA's facilities. Plaintiff has not alleged that it is a user of these facilities.

■ Therefore, for the reasons hereinabove set forth, this Court determines that it is without jurisdiction to consider the mandamus action alleged in Count I of the plaintiff's amended complaint and will grant the defendant's motion to dismiss Count I of the amended complaint pursuant to Fed.R.Civ.P. 12(b)(1).

■ The amended complaint in Count II specifically alleges that the Administrator failed to make a determination that the specifications for the Derry Plant precluded any proprietary, exclusionary or discriminatory requirements, pursuant to 33 U.S.C. § 1284(a)(6). Section 1284(a)(6) of Title 33 provides:

> (a) Before approving grants for any project or any treatment works . . . the Administrator shall determine—
>
> .     .     .     .     .
>
> (6) that no specification for bids in connection with such works shall be written in such a manner as to contain proprietary, exclusionary or discriminatory requirements other than those based upon performance . . . .

This section of the FWPCA specifically provides that the Administrator, before approving a grant, shall make a determination that the specifications do not contain proprietary, exclusionary or discriminatory requirements. This appears to be a specific, ministerial act which the statute commands the Administrator to perform. The complaint, however, does not request the Court to mandate the Administrator to perform this duty. Requiring the Administrator at this time to perform this ministerial act appears to be untimely and moot in view of the fact that the contract to construct the Derry Plant pursuant to the specifications was entered into in 1973 and the plant is now completed, having been in operation since March, 1977. Furthermore, the plaintiff does not request the Court to mandamus the Administrator to perform the duty required of him pursuant to 33 U.S.C. § 1284(a)(6), but in effect requests an accounting by the grantee, DTMA.

Although in Count II the plaintiff alleges jurisdiction pursuant to 28 U.S.C. § 1361 and 33 U.S.C. § 1365(a)(2), it appears that the plaintiff lacks standing to bring this action in mandamus. In Count II the plaintiff claims that he has suffered injury in that as the general contractor he was required to perform the contract pursuant to specifications which included superfluous equipment for which he was required to pay inflated prices. The plaintiff's request to mandamus the Administrator to eliminate from the specifications proprietary, exclusionary or discriminatory requirements in connection with a contract on which the plaintiff bid in 1973 for the construction of a plant which has been in operation since 1977 clearly would not place the plaintiff within the zone of interest protected by 33 U.S.C. § 1284(a)(6). In order to have standing, a plaintiff must show injury in fact within a protected zone of interest. *Association of Data Processing Service Organizations v. Camp*, 397 U.S. 150, 90 S.Ct. 827, 25 L.Ed.2d 184 (1970); *Concerned Residents of Buck Hill Falls v. Grant*, 537 F.2d 29 (3d Cir. 1976). The nonrestrictive specifications requirements of § 1284(a)(6) were obviously enacted for the benefit of the government obtaining the lowest construction costs possible, and if any segment of industry was intended to benefit from the mandate of that section it would be the suppliers of the equipment whose products were excluded by any discriminatory specifications. The alleged injury claimed by the plaintiff, assuming that he could establish a cause of action to recover for such injury, could be compensated by money damages only and money damages are not available in mandamus actions. *United States v. Commonwealth of Pennsylvania*, 394 F.Supp. 261, 265 (M.D.Pa.1975); *Brown v. United States*, 365 F.Supp. 328, 338 (E.D. Pa.1973), aff'd in part, remanded in part on other grounds, 508 F.2d 618 (3d Cir. 1974), cert. denied, 422 U.S. 1027, 95 S.Ct. 2621, 45 L.Ed.2d 684 (1975). Furthermore, the plaintiff in this mandamus action is the prime contractor who entered into a contract for the construction of the sewage treatment facility fully aware of the bid specifications and had the opportunity to factor the cost of the alleged superfluous equipment into his bid. Finally, the plaintiff is not an unsuccessful bidder within the meaning of those cases which have conferred standing. *See Merriam v. Kunzig*, 476 F.2d 1233 (3d Cir.), cert. denied, 414 U.S. 911, 94 S.Ct. 233, 38 L.Ed.2d 149 (1973); *CTTW&M v. EPA*, 452 F.Supp. 69, 74–75 (D.N.J.1978).

Therefore, for the reasons hereinabove set forth, this Court determines that it is without jurisdiction to consider the mandamus action alleged in Count II of the plaintiff's amended complaint and will grant the defendant's motion to dismiss Count II of the plaintiff's amended complaint pursuant to Fed.R.Civ.P. 12(b)(1).